THE RECTOR, CHURCH WARDENS AND VESTRYMEN OF ST. JAMES CHURCH, Syracuse, and Another, Appellants, *v.* FREDERIC D. HUNTINGTON, as Bishop of the Diocese of Central New York, Respondent.

82   125
10ap133
82   125
11ap436
82   125
18ap238

*Complaint dismissed on the opening — what considered on appeal — right of civil courts to interfere in ecclesiastical matters — an Episcopal minister must find his remedy within the church — conclusions from facts set up in a complaint are not to be deemed admitted.*

Where the complaint in an action is dismissed on the opening of counsel, the facts stated in the complaint are to be considered on appeal, and also such further facts as in the opening are offered to be proved, unless objection to such proof is made on the specific ground that it is not admissible under the pleadings.

The right of civil courts to interfere in ecclesiastical matters is considerably limited. The general rule is that such right exists only where there are conflicting claims to church property or to funds or to the use of them, or where civil rights are involved.

The Supreme Court has no right to order the specific performance of a canon of the Episcopal church or to supervise the action of the proper officer thereunder.

Where a person voluntarily enters the ministry of the Episcopal church he thereby becomes subject to the rules and canons of that church, and in case of any dissatisfaction with the manner in which the ecclesiastical affairs of the church are administered, he must accept the benefits or burdens of whatever remedies are provided for him within the church.

Where an allegation contained in a complaint is a conclusion from the other facts therein stated, it is not to be deemed admitted.

APPEAL by the plaintiffs, The Rector, Church Wardens and Vestrymen of St. James Church, Syracuse, and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 26th day of March, 1894, upon the decision of the court, rendered at the Onondaga Special Term, dismissing the plaintiffs' complaint, with notice of an intention to bring up for review on such appeal the order granted on the 27th day of February, 1894, dismissing the complaint.

The action was in equity, was brought to trial at Special Term, and, upon the opening of the plaintiffs' counsel, the complaint was dismissed. Upon the order and decision then made, the judgment was entered which is appealed from.

FOURTH DEPARTMENT, NOVEMBER TERM, 1894. [Vol. 82.

*Lyman, Hitchcock & Lyman* and *Joseph Mason*, for the appellants.

*A. H. Sawyer*, for the respondent.

MERWIN, J. :

When a complaint is dismissed on the opening of counsel the facts stated in the complaint are to be considered, and also such further facts as in the opening are offered to be proved, unless objection to such proof is made on the specific ground that it is not admissible under the pleadings. (*Clews* v. *N. Y. Nat. Banking Association*, 105 N. Y. 398.) The question then in this case is whether, upon the facts stated in the complaint and such other facts as were stated in the opening, without objection as to their not being pleaded, the plaintiffs are entitled to any relief.

In the complaint it is alleged that the plaintiff, The Rector, Church Wardens and Vestrymen of St. James Church, Syracuse, is a religious corporation, duly organized and incorporated under the laws of this State on August 14, 1848, and located at the city of Syracuse ; that its vestry consists of two church wardens, eight vestrymen, and its rector, except during such periods, if any, as it was without a rector ; and under the laws of the State the vestry are the trustees of the church or congregation, and, as such, have the charge of the property and temporal interests of the corporation, and are bound to manage and care for the same in the interests of the corporation and the congregation connected therewith ; that the church wardens and vestrymen have, under the laws of the State, the right and authority, as trustees, to call and induct a rector to the church or congregation as often as there shall be a vacancy, and to fix his salary or compensation ; that at the time of the incorporation of the plaintiff corporation there was, and ever since has been, in the United States a religious body or denomination known as the Protestant Episcopal Church in the United States of America, according to the polity of which the State of New York is divided into five parts or dioceses, one of which is called the diocese of Central New York, and another is called the diocese of Western New York ; that said church, for the regulation, care and furtherance of its internal affairs, spiritual and temporal interests and economy, has certain rules and regulations known as canons, which must be observed by the

bishops, rectors and other officers of the church, unless in conflict with the law of the State; that the plaintiff corporation ever since its organization has had and now has a church edifice at Syracuse known as St. James Church, in which religious services have always been conducted in accordance with the rules and ritual of the Episcopal church, and the plaintiff corporation always has been and now is ecclesiastically connected with and a part of the Protestant Episcopal church in the United States, and is ecclesiastically connected with and a part of the diocese of Central New York; that the defendant is bishop of the diocese of Central New York, and has been for the past five years; that the plaintiff Brockway is a duly ordained clergyman in said church, and has been for five years and upwards, and for three years immediately prior to December 1, 1892, he was, according to the provisions of the canons of the church, a resident of the diocese of Western New York and was a clergyman in regular canonical standing in said diocese; that on the 25th of November, 1892, the rectorship of the plaintiff corporation being about to become vacant by resignation of the rector, the vestry of the corporation unanimously elected the plaintiff Brockway rector at an annual salary of $1,200, payable in monthly installments, the rectorship to commence December 1, 1892; that on the 28th of November, 1892, Mr. Brockway accepted in writing the rectorship, and on the same day a notice in writing of such election and acceptance was given by the clerk of the vestry to the defendant, as required by the canons of the church; that the canons of the Episcopal church require that a minister of that church removing into the jurisdiction of any bishop and remaining there for the space of six months, shall, in order to gain canonical residence within the same, present to its bishop a testimonial from the bishop of the diocese in which he last resided, which shall set forth his true standing and character; that the plaintiff Brockway obtained from the bishop of the diocese of Western New York the required testimonial or "letter dismissory," so called, which is dated December 1, 1892, and certifies that Mr. Brockway "is a Presbyter of this Diocese in regular standing, and has not, so far as I know or believe, been justly liable to evil report for error in religion or viciousness of life for three years last past;" that this letter was delivered to the defendant on December 2, 1892, pursuant to the provisions of the canons of the church which require

a minister removing into another diocese, who has been called to take charge of a parish therein, to present to the bishop such a letter; that by the provisions of the canons it became the duty of the defendant to accept the said letter within six months after its presentation to him, and give notice thereof to the plaintiff Brockway and the bishop of the diocese of Western New York, unless he, the defendant, " had heard rumors, which he believed to be well founded, against the character of the plaintiff Albert A. Brockway which would form a proper ground of canonical inquiry and presentment," in which case it became the duty of the defendant to communicate the same to the bishop of the diocese of Western New York, and in that event no duty was imposed upon the defendant to accept such letter unless and until the plaintiff Brockway was exculpated from such charges; that the canons of the Episcopal church provide that no minister, removing from one diocese to another, shall officiate as the rector of any parish or congregation of the diocese to which he removes, until he shall have obtained from the ecclesiastical authority of the diocese into which he has removed, a certificate in the words following: "I hereby certify that the Rev. A. B. has been canonically transferred to my jurisdiction, and is a minister in regular standing;" that under the provisions of the canons it was the duty of the defendant to give to the plaintiff Brockway such a certificate within six months after the delivery to him of the letter dismissory unless he refused to accept it because of having heard rumors as above stated; that defendant did not within such period of six months, or at any time, hear rumors, which he believed to be well founded, against the character of the plaintiff Brockway which would form a proper ground for canonical inquiry and presentment, and did not communicate any such to the bishop of the diocese of Western New York, but he refused to give to the plaintiff Brockway the certificate of transfer, though the same was requested on the 2d of June, 1892, and on the 10th of May, 1892, the defendant returned the letter dismissory to the bishop who issued it; that the plaintiff Brockway continued to officiate as rector of St. James Church, and performed all the services and duties of his said position until the 20th of September, 1893, when the defendant issued and caused to be served on him the following order of inhibition:

" DIOCESE OF CENTRAL NEW YORK, *Sept.* 8, 1893.
" To the Rev. A. A. BROCKWAY :

" DEAR BROTHER.—Pending any proceedings in your case in the diocese to which you belong, and having corresponded with Bishop Coxe, it becomes my duty to apply the provision and direction given in title 1, canon 3 of the Digest, and I hereby admonish and forbid you to officiate in the Diocese of Central New York.

" I need not now say with what regret this prohibition, made necessary by your continued violation of the law, with aggravating incidents, and due to the order and authority of the church, is issued.

" Sincerely your friend,

" F. D. HUNTINGTON.

" *Bishop of the Diocese of Central New York.*"

That upon the service of this order the plaintiff Brockway ceased to officiate as rector, and has not so officiated since ; that there were no proceedings pending against the plaintiff Brockway, or in which he was interested, in the diocese where he belonged, or in any diocese, at the time of the writing or receipt of said order ; that the canon referred to in the order, and upon the authority of which the defendant claims to act, is as follows :

" If a clergyman shall come temporarily into any diocese un er the imputation of having elsewhere been guilty of any crime or misdemeanor, by violation of the canons or otherwise, or if any clergyman, while sojourning in any diocese, shall misbehave in any of these respects, the bishop, upon probable cause, may admonish such clergyman, and forbid him to officiate in said diocese. And if, after such prohibition, the said clergyman so officiate, the bishop shall give notice to all the clergy and congregations in said diocese that the officiating of the said clergyman is, under any and all circumstances, prohibited ; and like notice shall be given to the bishop, or if there be no bishop, to the standing committee of the diocese to which the said clergyman belongs. And such prohibition shall continue in force until the bishop of the first-named diocese be satisfied of the innocence of the said clergyman, or until he be acquitted on trial."

That for over five years last past it has been the custom in the diocese of Central New York to permit rectors not belonging to that

diocese and not canonically residents thereof, to officiate as rectors of Protestant Episcopal churches in that diocese without obtaining the certificate of transfer or a license from the bishop of such diocese, and that this custom was known to the plaintiffs and the defendant; that the plaintiff Brockway had license and authority from the defendant to officiate in said St. James Church during the time he did so officiate before, on and after the 1st of December, 1892; that the canons of the said church provide among other things that every minister and rector of that church shall be liable to presentment and trial by and before the proper ecclesiastical body or authority of that denomination for "conduct unbecoming a clergyman of said church," and if found guilty he shall be admonished, suspended or degraded, according to the canons of the diocese in which the trial takes place; that when ordained as a minister, the plaintiff Brockway, as is required by the rules of the church of every minister when ordained, promised and vowed canonical obedience to the bishop of the diocese where he resides or belongs.

The opening did not materially vary the case. It, however, was stated that prior to the election of Brockway there was some negotiation between the vestry and the defendant, in which the defendant objected to the election of Mr. Brockway, and there was, prior to the order of inhibition, correspondence between the defendant and Brockway concerning his right to officiate. There were also in the complaint general allegations that the acts and conduct of the defendant were unlawful and wrongful; that the canons as to certificate of transfer, and as to the right to issue the order of inhibition, were null and void, as in conflict with the laws of the State; that the right of the plaintiffs to enter into a contract had been improperly interfered with to their great damage.

The relief asked was substantially that the defendant be compelled to give a certificate of transfer, that the order of inhibition be set aside as null and void, and that the defendant be restrained from interfering with the carrying out of the contract between the plaintiffs.

In the answer most of the material allegations of the complaint are denied, and in substance it is alleged that the acts and conduct of defendant have been in entire conformity and in accordance with the rules and canons of the church.

The plaintiff corporation was incorporated under chapter 60 of the Revised Laws of 1813 (2 R. L. 1813, 212.) By section 1 of that act the church wardens and vestrymen are given power "to call and induct a rector to such church or congregation as often as there shall be a vacancy therein." This was amended by chapter 803 of the Laws of 1868 (§ 1, subd. 14) by adding thereto the words "and to fix his salary or compensation." One of the theories of the complaint is that these statutes gave the church wardens and vestrymen so absolute a power to call and induct a rector that the canon which required a certificate of transfer before the plaintiff Brockway could officiate, and the canon which authorized the defendant to prohibit his officiating, were, as to the plaintiffs, null and void, as being in conflict with the statutes above referred to. I do not understand that this position is now claimed by the plaintiffs to be correct. On the contrary, it is asserted that the affairs of St. James Church must be administered in accordance with the rules, usages and customs of the denomination to which the corporation belongs (see § 1, chap. 176, Laws of 1876; *People ex rel. Peck* v. *Conley,* 42 Hun, 98, and cases cited), and the plaintiffs claim that the defendant should be compelled to give a certificate of transfer in accordance with the canon on the subject, and that the order of inhibition should be set aside as not justified by the canonical provision. So that, in effect, the action is to compel the observance by defendant of the canons of the church so far as they may affect the right or power of the plaintiff Brockway to carry out his contract with the other plaintiffs.

The right of civil courts to interfere in ecclesiastical matters is considerably limited. The general rule is that such right exists only where there are conflicting claims to church property or funds or the use of them, or where civil rights are involved. The question here is whether the right of the plaintiff Brockway to officiate as a clergyman in the diocese of Central New York is such a civil right as to give him a standing in the civil courts.

In most of the cases that are cited in the elaborate brief of the learned counsel for the appellants the question arose between rival claimants to church property or its use, or to the use of trust funds, or in cases brought for a recovery of salary. There are several, however, cited which come nearer to the present case and should be here referred to. In *Walker* v. *Wainwright, Bishop, etc.* (16 Barb. 486),

FOURTH DEPARTMENT, NOVEMBER TERM, 1894.          [VoL 82.

a motion was made by plaintiff for an injunction to restrain the defendant from prosecuting a certain sentence of an ecclesiastical tribunal against the plaintiff by pronouncing judgment of displacement from the ministry. In the opinion it is said : " The only ground on which this court can exercise any jurisdiction in this case is that the threatened action of the defendant may affect the civil rights of the plaintiff, for the protection of which he has a proper recourse to the civil courts. The rights which are here invoked, for that purpose, are his exemption from taxation and the performance of certain civil duties. Conceding (though without expressly ruling the point) that here is ground enough for the action of this court, it becomes material to say that the only cognizance which the court will take of the case is to inquire whether there is want of jurisdiction in the defendant to do the act which is sought to be restrained. I cannot consent to review the exercise of any discretion on his part, or at all inquire whether his judgment or that of the subordinate ecclesiastical tribunal can be justified by the truth of the case. I cannot draw to myself the duty of revising their action, or of canvassing its manner or foundation, any further than to inquire whether, according to the law of the association to which both of the parties belong, they had authority to act at all. In other words, I can inquire only whether the defendant has the power to act, and not whether he is acting rightly." The question was then considered on that basis and the motion was denied.

In *O'Hara* v. *Stack* (90 Penn. St. 477) the plaintiff Stack was a priest in the ministry of the Catholic church, and had been for several years pastor of a church at Williamsport. This was in the diocese of Scranton, of which the defendant O'Hara was bishop. O'Hara undertook to remove Stack from his pastorship, and forbade his exercising any priestly functions in Williamsport. Stack thereupon brought an action in equity to restrain the bishop from removing him as pastor of the church or prohibiting him from exercising priestly functions, and also for a restoration. A decree was made declaring that the removal and prohibition were unlawful, but refusing restoration. The bishop appealed, as a portion of the costs were charged upon him. The court says that the appellant has no just cause to complain of the decree; that the profession of a priest is his property, and a prohibition of the exercise of that profession by

his bishop, without accusation or hearing, is contrary to the law of the land; that a right of a priest to the revenues of his church derived from pew rents and voluntary offerings, though uncertain in amount, and there is no specified salary, is a right of property which the law will recognize. Reference is made in the opinion to a statute which expressly gave the Court of Common Pleas, in which the decree was made, the supervision and control of unincorporated societies or associations.

In *Runkel* v. *Winemiller* (4 Har. & McH. 429) it was held that a mandamus was proper to restore to his pulpit a pastor of the Dutch Reformed church who had been wrongfully dispossessed by a portion of his congregation, it appearing that there was attached to the office temporal rights or emoluments. In *Union Church* v. *Sanders* (1 Houst. 100; 63 Am. Dec. 187) a mandamus was refused, there being no fees or emoluments attached to the office other than voluntary contributions, and it was said that mandamus lies for enforcement of legal rights only and not for those of a purely equitable character, nor for those of a mere spiritual or ecclesiastical nature, and that the right to the office and its functions being derived from ecclesiastical authority, cannot under any aspect be viewed as temporal rights.

On the part of the respondent our attention is particularly called to the case of *Connitt* v. *The Reformed Prot. Dutch Church of New Prospect* (4 Lans. 339; affd., 54 N. Y. 551) and *Chase* v. *Cheney* (58 Ill. 527). The latter case was an action in equity brought by Cheney, the plaintiff in the court below, to restrain the defendants therein from proceeding as an ecclesiastical court with the trial of Cheney for alleged offenses and misconduct as a presbyter of the diocese of Illinois and rector of a church in Chicago. The chief reason alleged for the interposition of the civil court was the want of authority in the spiritual court to try him, and a misconstruction of the canons. It was held that the civil courts will interfere with churches and religious associations where rights of property or civil rights are involved, but will not revise the decisions of such associations upon ecclesiastical matters merely to ascertain their jurisdiction, and that the decisions of ecclesiastical courts are final as to what constitutes an offense against the discipline of the church; that a rector of the Protestant Episcopal church has not such a vested right

FOURTH DEPARTMENT, NOVEMBER TERM, 1894.        [Vol. 82.

in his office, such a property in the right to preach, and in the salary and emoluments pertaining thereto, as will authorize the civil courts to interfere upon that ground to restrain an ecclesiastical court in his trial for an alleged offense against the canons and discipline of the church, and that the contract of employment and for his salary must be construed and enforced by reference to the canons which form a part of it, and if the minister be suspended and deposed for any ecclesiastical offense his right to the salary and emoluments is gone. And it was said that "the minister, in a legal point of view, is a voluntary member of the association to which he belongs. The position is not forced upon him, he seeks it. He accepts it, with all its burdens and consequences, with all the rules and laws and canons then subsisting, or to be made by competent authority, and can at pleasure and with impunity abandon it."

In the *Connitt* case one of the questions was whether the plaintiff was entitled to his salary as pastor, although the pastoral relation had been dissolved by an ecclesiastical court of the denomination to which the church of the plaintiff belonged. The church over which the plaintiff was pastor was attached to the religious denomination known as the "Reformed Church in America" and was under the ecclesiastical order and government of that church. In the churches of that denomination the trustees or consistory call the minister, subject, however, to the approval of an ecclesiastical body called the classis, and this body in a proper case had the power of dissolving the pastoral relation. It was held that the relation of pastor and people was purely ecclesiastical and that ecclesiastical tribunals alone have cognizance of it; that the contract between the particular church and its pastor was conditional and dependent upon ecclesiastical relationship, and being so the salary could not be recovered after the dissolution of the pastoral relation by an authorized church tribunal. It was said: "The secular courts have no jurisdiction over the ecclesiastical rights of either pastor or people; neither can resort to those courts for the protection or enforcement of such rights. The fact that the civil contract is subsidiary to this relation does not serve to bring this within the jurisdiction of the civil authorities. Nothing in the case of *Austin* v. *Searing* (16 N. Y. 112), relied upon by the plaintiff, warrants the conclusion that it does. The doctrine of that case is, that the civil courts will not

recognize the adjudications of voluntary associations upon the property rights of the members of such associations. Now, inasmuch as the relation in question is not a civil one, dependent upon municipal law, but wholly ecclesiastical, and wholly dependent upon ecclesiastical rule, and its administration, by the church judicatories, it is not for this court to review the decisions and judgments of such church judicatories. Over them, and the administration of their rules and usages, we have no jurisdiction. No civil right is infringed by them in dissolving the pastoral relation. Mr. Connitt has no right to the continuance of such relation, cognizable in the civil courts, and, consequently, any wrong done him by the church courts, in its dissolution, is not one cognizable by the civil courts, either in an original or appellate proceeding. The right to salary, etc., it is true, is, by contract, made dependent upon the continuance of the pastoral relation. But this does not bring such continuance within the cognizance of the civil courts. They can inquire only into the fact of the continuance. The relation is, nevertheless, controlled by the ecclesiastical authorities; and the fact of their dissolution of it is conclusive." Upon the affirmance of this case in the Court of Appeals it was held that when ecclesiastical judicatories have jurisdiction, civil courts cannot inquire whether they have proceeded according to the laws and usages of their church or whether they have decided correctly, but their decisions are final and binding upon the parties and courts. It was said that the decision of such tribunals as to their own jurisdiction in ecclesiastical matters, where there is not clearly an absence of jurisdiction, should receive great weight in civil courts.

In *Attorney-General* v. *Geerlings* (55 Mich. 562) it was held that the court would not inquire into the validity of the election of a deacon; that the office was ecclesiastical, not statutory, and is controlled by the unincorporated membership of a religious association, the decision of whose tribunals upon the election is final, and that the fact that the deacons are authorized by statute to be *ex officio* trustees of the corporation does not put the religious body and its elections under the control of the temporal courts. In *McGuire* v. *St. Patrick's Cathedral* (54 Hun, 207) it was held that the question whether a person who was a member of a Roman Catholic church died in communion with that church, and so became entitled to burial in his

lot in a Catholic cemetery, was, under the usages and discipline of that church, to be determined by the ordinary or bishop, and that the decision of that officer adverse to that right, was conclusive in an action by the representatives of the deceased to obtain such burial, although by the rules of the church no provision was made for a hearing, and none took place, and the decision was based on information informally acquired. Judge Van Brunt, in his opinion, says: " Under our form of government we do not think that courts can be called upon to compel churches to administer religious rights to persons claiming to be its members, or perform an act in any way impressed with that character."

The controversy in this case is not over the right of the plaintiff Brockway to recover his salary or the possession of his rectorship under some contract he has made. The theory of the action is that the plaintiffs need something more than they now have in order to make and consummate a complete and operative contract. In the complaint they seek either to nullify or to have the benefit of the canon as to the transfer of Brockway to the diocese of Central New York. No good reason, however, appears for treating it as 'a nullity. So, the plaintiffs say, it should be enforced by this court for their benefit, that we should compel the defendant to so qualify the plaintiff Brockway that he might be able to consummate his conditional arrangement.

The right of Brockway to be transferred to the diocese of Central New York was simply an ecclesiastical right, based on no contract, but on the canons of the church. Have we any right to order the specific performance of the canon, or supervise the action of the proper officer under it? The weight of authority is, I think, against it.

But, assuming that the plaintiffs have a civil right that may be considered here, the order of inhibition is in their way. This order was issued by the officer who, under the canon applicable thereto, had the right and power to issue such an order. He had, as bishop, jurisdiction of the subject-matter, and Brockway, the person to whom it was directed, was within his diocese seeking from him recognition. Brockway had submitted to him his " letter dismissory," and this had been returned to the bishop who gave it, and the defendant had refused to give a certificate of transfer. Still Brock-

way continued to officiate as a rector, although the canon forbade it until he had received a certificate of transfer in a specific form. In fact, Brockway was violating the canon, although, as he alleges, he followed a custom prevalent in that diocese, and had license and authority from the defendant to officiate in St. James Church during the time he did so officiate. He did not have the certificate required by the canon. The circumstances under which Brockway acted might materially mitigate his offense but would not take away the right and duty of the defendant to enforce the canon. The plaintiffs allege that the order was wrongfully and unlawfully issued, but no facts are stated other than those that have been referred to. It is alleged to be in conflict with the law of the State in that it interfered with the pending contract between the plaintiffs, but this ground is not now pressed. No good reason is apparent for treating the canon as unreasonable or in conflict with the law of the State. The order was temporary in its character, having in view the provisions of the canon under which it was stated to be issued. It is not claimed that Brockway was entitled to previous notice. The canon does not require it. Besides, it is evident from the statements in the opening that Brockway had notice of the objections that defendant had against him. There was correspondence between them, and the order was the culmination of the matter.

It seems to me very clear that the defendant had jurisdiction to make the order, and if so, under the law as laid down in the *Connitt* and the *Walker* cases, we have no right to consider the merits and determine whether there was just cause for the order. It being valid and binding on the parties and not reviewable here, the plaintiffs are not in a position here to ask the court for relief. They cannot ask this court to aid them in completing their contract when one of the parties to it is not qualified to enter into it according to canons and rules that bind both parties.

The plaintiff Brockway voluntarily entered the ministry of the Episcopal church and thereby became subject to the rules and canons of that church. In case of any dissatisfaction with the manner in which the ecclesiastical affairs of the church were administered, he took the benefit or burden of whatever remedies were provided for within the church. He has not alleged that he has exhausted

the remedies within the organization, an allegation which has in some cases been held to be necessary. Nor is it alleged that he has not a complete remedy within the church for any injustice the defendant may have done.

But the plaintiffs say that they have a complete cause of action in which this court has jurisdiction, in the following allegations : " That by reason of the aforesaid wrongful and unlawful conduct and acts of the defendant, and because of his said wrongful and unlawful refusal to give the plaintiff Albert A. Brockway said certificate of transfer, and because of his said wrongful and unlawful act in issuing said order of inhibition or prohibitory letter, the plaintiffs are wrongfully and unlawfully prevented from performing and fullfilling upon their respective parts the aforesaid agreement and contract made by them for the services of the plaintiff Albert A. Brockway as rector of St. James Church." These are rather conclusions from the other facts stated, and are not to be deemed admitted. (*Bogardus* v. *New York Life Ins. Co.*, 101 N. Y. 337 ; *Coffin* v. *Grand Rapids Hydraulic Co.*, 61 N. Y. Super. Ct. 65 and cases cited ; *Schroeder* v. *Becker*, 22 Wkly. Dig. 261 ; Moak's Van Santvoord's Pl. [3d ed.] 184.) If by these allegations the defendant is sought to be made personally liable for a wrongful act, that is not within the scope of the action. It cannot in this way be turned into an action at law for damages.

The foregoing considerations lead to the conclusion that a case is not presented by the plaintiffs which entitles them in this court to any relief, and that, therefore, the judgment of the Special Term is correct.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.