(20 Misc. Rep. 236.)

### WALLER et al. v. HOWELL.

(Supreme Court, Special Term, Orange County. May, 1897.)

COURTS—JURISDICTION—CHURCH MEMBERSHIP.
    The question of church membership is entirely ecclesiastical, and involves no rights which the civil courts can recognize; and therefore injunction will not lie to restrain an Episcopal clergyman from striking names from the register of communicants in his parish, which the canons of the diocese require him to keep.

Action by George E. Waller and others against David T. Howell. Defendant moves to vacate an injunction. Granted.

T. F. Bush, for plaintiffs.
M. N. Kane, for defendant.

HIRSCHBERG, J. The plaintiffs have brought this action, as members and communicants of St. John's Protestant Episcopal Church of Monticello, against the defendant, its rector, to restrain him from striking their names from the parish register. An injunction has been obtained on the verified complaint and an affidavit of one of the plaintiffs enjoining the defendant from striking from said register the names of the plaintiffs, or any of them, until the further order of the court; and the defendant now moves to vacate this injunction.

The injunction would not be vacated if there was a possibility that the plaintiffs could successfully maintain their action; but an examination of the authorities has satisfied me that the relief sought is beyond the province of the court, and that the defendant is therefore entitled to be freed from the restraint imposed upon him, even during the continuance of the action.    The plaintiffs' brief correctly states the rule applicable to the case, viz. that, where no right of property or civil right is invaded, all matters of a religious or ecclesiastical nature are left entirely to the jurisdiction of the ecclesiastical judicatories, and the courts will not interfere with the decisions of the church tribunal.    All questions of faith, doctrines, and discipline belong exclusively to the church and its spiritual officers; and the courts will neither review their determination on the facts, nor their decision on the question of jurisdiction.

The plaintiffs, however, insist that the threatened action of the defendant invades valuable civil rights, in the destruction of the evidence of their membership in the church, and by affixing a stigma upon their character and standing as citizens in a Christian community.    It is impossible to so construe the contemplated act of the rector in striking the names of the plaintiffs from the list of communicants.    By the canons of the Protestant Episcopal Church, in the diocese of New York, it is provided that every minister in charge of a parish shall keep a register of baptisms, confirmations, communicants, marriages, and funerals within his cure.    This register is to be kept by the minister in a book provided by and belonging to the vestry, which book shall be the parish register, and shall be preserved by the vestry as a part of the records of the church.    In it shall be specified the name and time of birth of each child baptised, with the name of the parents and sponsors; the name of each adult baptised; the name of each person confirmed; the names of the parties married, with the names of the witnesses required by the civil law; the name of each person buried; and the time when each rite was performed.    It is further provided that the list of communicants shall embrace all within the cure as nearly as can be ascertained, and that the minister, on or before the first day of every annual convention, shall present to the bishop a statement, among other things, of the number of communicants in his parish or church.    It is evident that the object of these provisions is to gather and preserve accurate church statistics, together with a record of the ritual ceremonies performed.    No rights, civil or spiritual, are created or necessarily authenticated by the entries in the record, but its keeping is made a part of the minister's work as a spiritual officer of the church. If the manner in which he performs this work is deemed of sufficient importance to merit review, there would doubtless be ample provision made for the examination of grievances in the church and by the ecclesiastical authorities.    But, whether such provision exists or not, it is clear that the civil courts can no more command the minister in his mode of keeping the register than they could in any other branch of his clerical work.    If the defendant should decide to strike every name from the list of communicants, the church authorities alone could discipline him, and could alone furnish redress to the ag-

grieved members of the church. If the record related to the incorporators in the church corporation as such, or officially authenticated the shareowners in the church property, a different question might be presented. But the courts are properly as powerless to dictate to the minister the manner in which he shall keep the record of his priestly functions as they would be to supervise and control the details of the daily performance of such functions by him.

The question whether a right of membership and communion in the church is a civil right has been frequently adjudicated. In McGuire v. St. Patrick's Cathedral, 54 Hun, 207, 7 N. Y. Supp. 345, it was held that the question as to whether an individual was in communion with the church was one over which the church itself had exclusive jurisdiction. Mr. Justice Barrett said:

"In my judgment, McGuire contracted for the exclusive jurisdiction of the church with regard to the question of communion. Spiritual questions are solely for the determination of the church authorities. Over their action in the domain of church discipline or excision the civil courts exercise no advisory power. * * * To attempt to exercise jurisdiction in such matters upon the plea of want of jurisdiction in the church authorities of first instance would be the entering wedge whereby the symmetry of our governmental system with regard to church and state might readily be destroyed."

Mr. Justice Van Brunt said:

"Under our form of government, we do not think that courts can be called upon to compel churches to administer religious rites to persons claiming to be its members, or perform an act in any way impressed with that character."

In that case the right of burial in a lot purchased by the deceased was refused, and no civil right was considered to be involved in the question of communion upon which the right of burial depended.

In Rector, etc., v. Huntington, 82 Hun, 125, 31 N. Y. Supp. 91, it was held expressly that the supreme court has no right to order the specific performance of a canon of the Episcopal Church, or to supervise the action of the proper officers thereunder. The defendant in that case refused to give the plaintiff a certificate of transfer from his former diocese, without which the latter could not officiate in a parish to which he had been regularly called, but it was held that no civil right was thereby invaded. The court said:

"The question here is whether the right of the plaintiff Brockway to officiate as a clergyman in the diocese of Central New York is such a civil right as to give him a standing in the civil courts."

And it was held, on the authority of numerous cases cited, that the right to be transferred to the diocese mentioned, notwithstanding it involved the right to earn and receive the salary agreed to be paid by the church in that diocese, "was simply an ecclesiastical right, based on no contract, but on the canons of the church."

To the same effect, in substance, are Dieffendorf v. Reformed Calvinist Church, 20 Johns. 12; Robertson v. Bullions, 11 N. Y. 243; People v. German U. E. Church, 53 N. Y. 103; Connitt v. Reformed Protestant Church, 54 N. Y. 551; Richardson v. Society, 58 N. H. 187; Chase v. Cheney, 58 Ill. 509; Dwenger v. Geary, 113 Ind. 106, 14 N. E. 903; German Reformed Church v. Seibert, 3 Pa. St. 282; Shannon v. Frost, 3 B. Mon. 253; and Fitzgerald v. Robinson, 112 Mass. 371.

In Dwenger v. Geary, the court said:

"No power, save that of the church, can rightfully declare who is a Catholic. The question is purely one of church government and discipline, and must be determined by the proper ecclesiastical authorities."

In discussing this subject, it was said by the court in Shannon v. Frost:

"This court, having no ecclesiastical jurisdiction, cannot revise or question ordinary acts of church discipline. Our only judicial power in the case arises from the conflicting claims of the parties to the church property and the use of it. * * * We cannot decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly, cut off from the body of the church. We must take the fact of expulsion as conclusive proof that the persons expelled are not now members of the repudiating church; for, whether right or wrong, the act of excommunication must, as to the fact of membership, be law to this court. The judicial eye of the civil authority of this land of religious liberty cannot penetrate the veil of the church, nor can the arm of this court either rend or touch that veil for the forbidden purpose of vindicating the alleged wrongs of the excinded members. When they became members, they did so on the condition of continuing or not, as themselves and their church might determine. In that respect they voluntarily subjected themselves to the ecclesiastical power, and cannot invoke the supervision or control of that jurisdiction by this or any other civil tribunal."

It is apparent, therefore, that the question of church membership is purely ecclesiastical, and that no civil right is involved in the plaintiffs' claim to be regarded as communicants in the St. John's Episcopal Church of Monticello. In their complaint they allege that "for reasons addressed to their own consciences, arising out of the known habits and conduct" of the rector, they could no longer accept his ministrations as a priest, and have therefore "abstained from further attendance at the services of the church conducted by him." He has informed them in effect that he will not count them as members during their absence, but will strike their names from the list of communicants. The controversy must be settled by the church. Whether or not the defendant is inspired by malice, whether or not the course he threatens is justified by the plaintiffs' conduct, or even whether he has jurisdiction in the premises, are all immaterial to the present inquiry. It is sufficient that the court is without jurisdiction, either to determine who are communicants, or to supervise or control the defendant in his manner of keeping the parish register committed to him by the church, and that the subject-matter of this action and the remedy which the plaintiffs seek in it are beyond the pale of judicial cognizance.

The injunction should be vacated. Ordered accordingly.