# St. Casimir's Polish Roman Catholic Church's Case.

*Church law—Church property—Membership—Division of parish —Loss of membership in particular church by division—Right of members in property controlled by church law—Act of April 26, 1855, P. L. 330.*

1. There can be no property rights in church property, save through membership in the congregation.

2. There is nothing in the Act of April 26, 1855, P. L. 330, or any other statute, which gives to a member of a congregation a property right in his membership therein.

3. In matters relating to a church or other voluntary organization its members are bound by and required to conform to its laws.

4. Where the laws of a church denomination give to its constituted authorities the right to divide a parish, so as to transfer the members from one church to another, such laws and the rights exercised thereunder will be recognized by the civil courts.

5. After such a division has been made, the members transferred lose their membership in their former church, and all interest in the property thereof.

6. In consequence of their loss of membership therein, they have no standing to present a petition in the common pleas for the appointment of trustees over the property of such church.

Argued March 7, 1922. Appeal, No. 300, Jan. T., 1922, by trustees, from decree of C. P. Schuylkill Co., March T., 1921, No. 226, dismissing petition for appointment of trustees, in re Petition of Trustees of St. Casimir's Polish Roman Catholic Church. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition for appointment of trustees. Before BERGER, J.

The opinion of the Supreme Court states the facts.

Petition dismissed. Petitioners appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Arthur L. Shay,* with him *Henry Houck,* for appellants.—The decree of the church authorities could not deprive petitioners of their property rights: Trustees of Lutheran Congregation v. St. Michael Evangelical Church, 48 Pa. 20; Latshaw's App., 112 Pa. 142; Brendle v. Congregation, 33 Pa. 415; Fernsler v. Seibert, 114 Pa. 196; Zion Church v. Light, 7 Pa. Superior Ct. 223; Krauczunas v. Hoban, 221 Pa. 213.

Even where a majority of a congregation votes to place the property under the control and in the name of the bishop, according to the canons of the Catholic Church, viz, in fee simple, this court declares it a nullity as opposed to the law of the land: Mazaika v. Krauczunas, 233 Pa. 138; Novickas v. Krauczunas, 240 Pa. 248; Novicky v. Krauczunas, 245 Pa. 86.

*Daniel C. Donoghue,* with him *R. R. Koch, James Fitzpatrick* and *John F. Whalen,* for appellee.—Members of a religious congregation are members of a voluntary association and are bound by the rules and regulations of the association: Tuigg v. Tracy, 104 Pa. 493; Phipps v. Jones, 20 Pa. 263.

OPINION BY MR. JUSTICE SCHAFFER, March 27, 1922:

Prior to March 1, 1920, petitioners were members of St. Casimir's Polish Roman Catholic Church of Shenandoah. If appellee's position is sustained, thereafter they ceased to be members, and for that reason had no standing to present to the court below the petition which gives rise to this controversy.

St. Casimir's Church had a large congregation, almost a thousand in number. March 1, 1920, the duly constituted authorities of the Catholic Church divided the parish in which it belonged, and directed that all of its members on one side of the newly established boundary line should be members of St. Stanislaus' Church, another Catholic church in Shenandoah, which was created as a new parish; the effect of this, under the canons of

the church, was to transfer the petitioners and several hundred other members of the first named church from membership in it to membership in the latter.

After this action was taken by the church authorities, the former congregation of St. Casimir's Church called a meeting which was attended by a large majority of its members, the bulk of them being those transferred to membership in St. Stanislaus' Church, who by formal announcement entered their protest against what had been done by the church authorities, elected appellants trustees of the church, and resolved that proceedings should be instituted to have the title to the church property transferred from the archbishop of the diocese in which the church was located, who held the title, to the elected trustees of the church. Accordingly the petition we are now considering was presented to the court below, the prayer of which was that the appellants, petitioners, be appointed trustees of the legal title of the church property, in trust for the congregation of the church, in the place and stead of the archbishop.

An answer was filed by Cardinal Dougherty, Archbishop of Philadelphia, in which, among other things, it was set up that the "petitioners are not residents of St. Casimir's parish, but are all residents of St. Stanislaus' parish; and that as nonresidents of St. Casimir's parish, they have no right to assert any claim to ownership or control of the property of St. Casimir's parish," and praying for the dismissal of the petition. After hearing, the petition was dismissed by the court below, which held that the proper ecclesiastical body of the church, empowered to make the division, had divided St. Casimir's parish, that this action by the church authorities was binding on the courts, and that under the laws, customs and usages of the Roman Catholic Church, those members of St. Casimer's Church residing within the boundary lines of the newly established St. Stanislaus' parish, ipso facto, by the order of division, ceased to be members of the former and became members of the latter,

without any voice thereafter over the temporal affairs of the original parish, or power or authority over any of the church property therein. The petitioners have appealed from the order dismissing their petition.

Appellants' position is that, as members of St. Casimir's Church, they, and the others affected by the division, have rights in the property of that church, of which they cannot be deprived by the act of the church authorities in dividing the parish and consigning them to membership in another church; they contend that the question is a temporal one, affecting the title to the real estate of the church and not in its nature spiritual or ecclesiastical, and that under the Act of 1855 and its supplements and amendments, they have a standing to petition the court to establish their rights.

If the petitioners are members of St. Casimir's Church, they are parties in interest, and therefore entitled to call the powers of the court into action to appoint trustees to take over the legal title to the church property (Petition of Trustees of St. Joseph's Lithuanian Roman Catholic Church, filed herewith [the preceding case]: Burton's Appeal, 57 Pa. 213; St. George's Church Petition, 244 Pa. 410). This brings us to the critical inquiry in the case. Is church membership a temporal or spiritual matter; does the decision as to who are and who are not members of any given church lie within the domain of the tribunals of the State or of the Church? Appellants concede that if the question involved is ecclesiastical and spiritual, it is solely within the jurisdiction of the church authorities.

It was testified in appellee's behalf, without contradiction, that under the canon law of the Roman Catholic Church, after the division of a parish, the members of the respective parishes, thus created, have no right to determine for themselves to which church they belong, that those within the respective parishes belong to the church within that parish, and the persons of one parish have no jurisdiction over the affairs of the other. Appel-

lants admit that, under the laws of the Church, the proper authorities made the division of the parish and that, ecclesiastically, the effect of the division was to sever appellants from membership in St. Casimir's Church. "In Pennsylvania the term 'parish' has no especial legal signification, it is used merely in its general sense. In English ecclesiastical law, it has been used to designate the territory committed to the particular charge of a parson or priest. In the absence of a state church here, however, the status of a parish is rendered comparatively unimportant; if used in ecclesiastical divisions, it has just such importance and particular significance as may be given it under ecclesiastical regulations": Tuigg v. Treacy, 104 Pa. 493, 498.

Mr. Justice Simpson, delivering the opinion in Furmanski v. Iwanowski, 265 Pa. 1, at page 5, after reviewing our earlier cases dealing with the subject of church laws and the binding effect in certain instances of the decisions of duly constituted church tribunals, thus laid down the broad, controlling, legal principle: "In matters relating to a church or other voluntary organization its members are bound by and required to conform to its laws......Where it has appropriate tribunals to decide what are the scope and effect of its laws their decisions duly made are binding on the members unless in violation of the law of the land." In Watson v. Jones, 80 U. S. 679 (one of the most famous church disputes in the country's history), it was said, at page 728: "The right to organize religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations and officers within the general association, is unquestioned. All who unite themselves to such a body, do so with an implied consent to this government and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such re-

ligious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that these decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provided for."

Appellants treat the question before us, as one of property rights in the church vested in them, but the difficulty this meets with is, that there can be no property rights in church property, save through membership in the congregation, and this essential cord of membership, to tie themselves to the church property, petitioners do not now possess.

Appellants would invoke the Act of April 26, 1855, P. L. 330, and its supplements and amendments, relating to the right of a congregation to control church property, to sustain their position, contending that a temporal right was infringed by the division of the parish. We know of no legislation which gives to a member of a congregation a property right in his membership therein. His rights in the church property flow from his membership. We are not in any way impairing the principle announced in Krauczunas v. Hoban, 221 Pa. 213, that church property belongs to the congregation of the church. The difficulty here is that appellants are no longer members of the congregation.

Counsel have not referred us to any Pennsylvania case on the precise point we are dealing with—whether church membership is a temporal or ecclesiastical matter—nor has our own research developed one; but we have discovered that the subject has received consideration in other jurisdictions. It was held in Waller v. Howell, 45 N. Y. Supp. 790, that the question of church membership is entirely ecclesiastical and involves no rights which the civil courts can recognize. In Shannon v. Frost, 3 B. Monroe 253, at page 258, the Supreme

Court of Kentucky said: "Our only judicial power in the case arises from the conflicting claims of the parties to the church property and the use of it......We cannot decide who ought to be members of the church, nor whether the excommunicated have been, justly or unjustly, regularly or irregularly, cut off from the body of the church. We must take the fact of expulsion as conclusive proof that the persons expelled are not now members of the repudiating church; for, whether right or wrong, the act of excommunication must, as to the fact of membership, be law to this court. For every judicial purpose.......we must consider the persons who were expelled by a vote of the church, as no longer members of the church, or entitled to any rights or privileges incidental to or resulting from membership therein...... Every member of that church has a beneficial interest in the property thus conveyed, so long as he or she shall continue to be a member, but no longer. It is only as a constituent element of the aggregated body or church, that any person can acquire or hold, as a cestui que trust, any interest in the property thus dedicated to that church......The judicial eye of the civil authority of this land of religious liberty, cannot penetrate the veil of the church, nor can the arm of this court either rend or touch that veil for the forbidden purpose of vindicating the alleged wrongs of the excinded members. When they became members they did so on the condition of continuing or not, as themselves and their church might determine. In that respect they voluntarily subjected themselves to the ecclesiastical power, and cannot invoke the supervision or control of that jurisdiction by this or any other civil tribunal. Then, not being now members of the church to whose use the ground was conveyed, the appellants seem no longer to be entitled to any beneficial interest in that property, nor to any other right which this court can either enforce or recognize." In our own case of German Reformed Church v. Seibert, 3 Pa. 282, we held that as a person

excommunicated from the church ceases to be a member, he loses his right as a corporator of the church. In Wheelock v. First Presbyterian Church of Los Angeles, 51 Pacific Repr. 841, the Supreme Court of California decided that the division of a local Presbyterian church into two organizations by an act of a presbytery, according to the recognized ecclesiastical law of the Presbyterian Church, is binding upon the local church and upon the civil courts whenever material to pending litigation.

Our conclusion, both from reason and authority, must be that, as a result of the division of St. Casimir's parish, appellants lost their membership in its church and all interest in its property; they, therefore, had no right which the court below could sanction as prayed for in their petition, which the court properly dismissed.

The assignments of error are overruled and the order dismissing the petition is affirmed at the cost of appellants.