## Tsenoff et al. *v.* Nakoff et al., Appellants.

Argued May 27, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Carl B. Shelley,* with him *Fred C. Morgan* and *Earl Handler,* for appellants.

*J. Paul Rupp,* with him *Metzger & Wickersham* and *Wickersham & Wickersham,* for appellees.

PER CURIAM, July 7, 1937:

David Nakoff had been duly ordained as a priest according to the usages and doctrines of the Holy Synod of the Bulgarian-Orthodox Church at Sofia, Bulgaria, and was duly appointed by Exarch Joseph to act as priest of the Steelton, Pennsylvania, congregation in 1914. He was subsequently reappointed to this church after having been transferred from Steelton, Pa., to Granite City, Illinois, where he served the Bulgarian-Orthodox Church for about two years. Under the leadership of this priest an attempt was made by the congregation of this church at Steelton, on or about August 29, 1928, to annul its relations with the Synod at Sofia. In 1930 Nakoff was "suspended" as a priest and in 1933 the Holy Synod of the Bulgarian-Orthodox Church unfrocked him for insubordination and cognate offenses. Nakoff, however, continued to conduct services in the Steelton church and ignored the unfrocking order.

Plaintiffs sought an injunction against Nakoff and the other defendants who constitute the official board of the church known as the Macedono-Bulgarian Church, "St. Annunciation" of Steelton, Pa. This church was duly incorporated in Pennsylvania on June 1, 1920. Its stated purpose was "the worship of Almighty God according to the doctrines, creed, statutes, and canons of the Independent Synodal Orthodox Bulgarian Church." The original By-Laws contain the following provisions: "The church and its organization as Bulgarian and Orthodox are subordinate to all the canonical laws of the Orthodoxy of the Holy Synod of the Bulgarian Orthodox Church, or the Holy Exarchate. The appointment of the minister who will serve at the church, and also his transfer or dismissal, will depend wholly upon the authority of the Holy Synod or the Holy Exarchate. The minister in service is required to execute all his obligations entrusted to him which the ordinances and regulations of the Holy Orthodox Church and the Holy Synod of the Bulgarian Church bestow upon him. Misunderstandings aroused between the minister and the church committee are investigated and finally determined by the Holy Synod of the Bulgarian Orthodox Church and of the Holy Exarchate." The only "Independent Synodal Orthodox Bulgarian Church" was and is now that Supreme Body of "The Exarchate" or Denomination "The Holy Synod of Sofia."

Hon. Henry C. Niles, specially presiding, awarded a decree nisi "restraining David Nakoff from using the property of the 'Macedono-Bulgarian Orthodox Church St. Annunciation' at Steelton, Pa., and from conducting any public worship therein." It was also decreed nisi that "the defendants other than the said David Nakoff be restrained and enjoined from rendering any assistance or encouragement to the said David Nakoff in his efforts and endeavor to continue as priest in the aforesaid church, that the defendants be restrained generally from interfering with the business management

or property of said 'Macedono-Bulgarian Orthodox Church St. Annunication' at Steelton, Pa., otherwise than under the supervision and control of the Holy Synod at Sofia, and that no one be permitted to officiate as Priest or Minister in said church who is not duly ordained and appointed as a Priest or Minister by the Holy Synod at Sofia; and that said church edifice and hall be directed to be used in connection with the original doctrines, customs and usages of the said Faith, as set forth in the charter in 1920." Exceptions were filed and these were later dismissed by the court in banc.

The learned Chancellor, in his adjudication, aptly said: "The defendants admit, and the evidence shows he [Nakoff] refused to obey or submit to the jurisdiction of the Sofia Synod, and defendants are excluding the plaintiff Tsenoff, the duly appointed priest, from acting as priest of the congregation, and from the property thereof. The crucial question is: Their right to do so under the laws of Pennsylvania. Under the constitution of the denomination the Synod and Tsenoff, the missionary bishop and priest appointed by the authority of the Synod, and the plaintiffs who adhered to him and to the denomination, are entitled to the management of the Steelton church and possession of the property thereon, in subordination to the decrees of the Holy Synod, which is the supreme and final tribunal. The evidence establishes that the Steelton church was not formed as an independent body, but was and is a part of the denomination represented by the Synod at Sofia. These defendants by a course of conduct covering many years voluntarily subjected themselves to the ecclesiastical power of the Holy Synod at Sofia. The decision of the Synod, which is the tribunal of last resort of the denomination, is final. The governing principles are established by many Pennsylvania cases. One of the latest is *Takach v. Molchany,* 318 Pa. 65 [177 A. 697]. Among the previous cases on these principles that are illuminating are: *Rhinelander v. Ballantine,* 23 Dist. 1093, in

an opinion in 1914 by WEAND, J., Montgomery County; and in 1922 *St. Casimer's Polish Catholic Church*, 273 Pa. 494 [117 A. 219]; *Salak v. St. Mary's Greek Catholic Church of Nesquehoning* in 1935, 317 Pa. 39 [176 A. 453]."

The court in banc, in its opinion, said: "That the Findings of Fact challenged by the exceptions are supported by the evidence is clear. The decisions in Pennsylvania referred to in the adjudication seem to be clear also that: The facts found establish the original religious trust in 1908 and reaffirmed in the charter of 1920; which the defendants have violated and are persistent in such violation."

In reply to the contention that "all priests who are sent to America [from Bulgaria] are under the straight supervision of the Ministry of Foreign Affairs and Religious Cults of Bulgaria" and that this gave the Government of Bulgaria "a secular grasp upon every minister of the Bulgarian-Orthodox Church in the United States," the court in banc said: "Neither the Bulgarian Government nor its Ministry did anything regarding Nakoff after July 5, 1923. It was the Synod at Sofia which reinstated him as priest at Steelton, and the same superior Tribunal which tried and unfrocked him and replaced him by the appointment of Tsenoff, and which finally dismissed his appeal December 11, 1933. The constitution of the Bulgarian-Orthodox Church provides that in ecclesiastical matters the Holy Synod is the supreme spiritual authority of the Bulgarian church wherever it is located. The matter is entirely ecclesiastical. The Bulgarian Government or Ministry at Washington has not attempted to interfere with the Synod. . . . It is not clear that any public policy of this Commonwealth or of the United States of America is involved sufficiently to take this case out of the rule of *Salak v. Church*, 317 Pa. 39 [176 A. 453], and the other cases cited."

We are convinced that the issues in this case were correctly decided by the chancellor and court below and that nothing in the record of this case, which is a dispute over church property, takes it out of the rule expressed by this court in *Krecker et al. v. Shirey et al.,* 163 Pa. 534, 547, 30 A. 440, and often reiterated (see *Salak v. Church,* supra), that "the organization of a denominational body or church involves the adoption of a religious creed and an ecclesiastical policy," and that "to abandon or to repudiate either is to abandon or secede from the body whose authority is thus disregarded."

The decree is affirmed, at the appellants' cost.