## George v. Conemaugh Presbytery

*Earl R. Handler* and *Robert Carylefee*, for plaintiff.

*Fisher, Ruddock & Simpson*, for defendant.

CLARK, P. J., August 16, 1961.—This case is an equity case. The complaint was filed by plaintiff, who contends that he was removed as an elder in the Homer City Presbyterian Church by the administrative commission of defendant and that the administrative commission had no authority to dismiss him as an elder. He also contends that he was asked to sever his membership in the Homer City Presbyterian Church by the administrative commission. He further states that he refused to voluntarily sever his membership. There is no allegation that his membership with the church has been severed. He does complain that he does not receive notices of the activities of the board of elders, he has not been invited to participate in communion and he has not received any reports concerning the church membership or the board of elders. Plaintiff prays for relief as follows:

A. That an injunction be issued restraining defendant from depriving him from membership in the

Homer City Presbyterian Church or from any action, direct or indirect, having as its purpose affecting his good standing as a member in the church or the termination of his membership in the church.

B. That the court makes a determination to the effect that the action of defendant in this case was illegal and void and in no way impaired or affected the membership of plaintiff in the Homer City Presbyterian Church of his occupancy of the office of elder and that defendant be ordered officially to notify the Homer City Presbyterian Church to such effect.

C. General relief.

Defendant filed preliminary objections primarily raising two questions. First, defendant contended that the complainant must exhaust his remedies through the various judicatory bodies of the church. Second, defendant objects to the jurisdiction of the court over the subject matter. Plaintiff, according to the pleadings, was removed as an elder on March 15, 1960; no action was taken in regard to this until April 13, 1961, when a complaint was filed. The term as an elder expired January 1, 1961, or at least prior to the time of filing of the complaint. Therefore, whether or not his removal as an elder was done in a proper manner or not is a moot question.

There is no allegation that plaintiff has been removed as a member of the church. If he has been denied any rights of membership or should he be removed as a member of the church, this, in the opinion of the court, is certainly a religious or ecclesiastical matter rather than a temporal one and should be reviewed by the courts of the church. The writer of this opinion is a member of this denomination and feels quite certain that if the complainant has any cause wherein he is entitled to have the same made right, an appeal to the proper judicatory bodies of the church will result in his

being given a fair hearing, and a decision will be made based upon the facts and the rules of the church.

Ordinarily, civil courts do not have jurisdiction over matters which are purely ecclesiastical.

If we assume that this is an ecclesiastical matter rather than a temporal one, there is no place in the civil courts for such a case. This principle has been established by a line of decisions by the Supreme Court of Pennsylvania. To determine whether or not this is a purely ecclesiastical question, we call attention to some of the cases which have been decided by the Pennsylvania appellate courts.

The earliest decision is that of German Reformed Church v. Seibert, 3 Pa. 282. This case was ruled upon the pleadings, and a reading of the excerpts thereof shows the facts to be quite similar to those of the present situation. Plaintiff was seeking a restoration of membership following excommunication by the ecclesiastical courts of a church having a form of government quite similar to that of the United Presbyterian Church in the United States of America, and the particular congregation had been incorporated. The Supreme Court reversed the lower court and dismissed the case. In the opinion, at page 291, appears the following oft-quoted passage:

"The decisions of ecclesiastical courts, like every other judicial tribunal, are final; as they are the best judges of what constitutes an offence against the word of God and the discipline of the church. Any other than those courts must be incompetent judges of matters of faith, discipline and doctrine; and civil courts, if they should be so unwise as to attempt to supervise their judgments on matters which come within their jurisdiction, would only involve themselves in a sea of uncertainty and doubt, which would do any thing but improve either religion or good morals."

We believe that Irvine v. Elliott, 206 Pa. 152, is also controlling. Defendants of this case had been successful in church tribunals in unfrocking plaintiff as a priest of the Protestant Episcopal Church in Huntingdon. He then brought a trespass action against individuals, alleging a conspiracy to injure him by depriving him of his reputation and of his right to be a clergyman, and a directed verdict against plaintiff was affirmed. At page 154, the court quoted from the Seibert case and also held:

"There is no law which imposes upon a common pleas jury the duty of passing upon the competency or impartiality of a church court."

The next case which we consider as controlling is Furmanski v. Iwanowski, 265 Pa. 1. In this case, the priest of a Roman Catholic Church in Nanticoke was suspended by his bishop for insubordination. After unsuccessful appeals, which apparently exhausted the internal remedies of the church (see page 4 of 265 Pa.), he and his cohorts held possession of the church building, and the opposing members of the church filed a bill in equity to obtain possession thereof. From an injunction in favor of plaintiffs, defendants appealed unsuccessfully. Justice Simpson cites the Seibert case and other decisions for the rule that all voluntary organizations must conform to their laws and the decisions of their tribunals are binding on all members, unless in violation of the law of the land; and rejected the contention that suspension from office without a trial is contrary to the law of the land, pointing out that the rules and regulations of the church on the matter of the suspension of priests becomes a matter of compact binding upon those becoming priests: pages 5-8. Also rejected was the argument that the incorporation of the local church rendered it independent of the laws of the church: page 8.

St. Casimir's Polish Roman Catholic Church's Case, 273 Pa. 494, certainly controls the present case. The subject church in Shenandoah was a large one, and the archbishop of Philadelphia divided the parish. A group from what became the new parish filed a petition for the appointment of trustees to hold the church property in trust for the congregation. The archbishop filed an answer, alleging that petitioners were not residents of St. Casimir's Parish and, hence, had no rights in the property in said parish. The lower court was affirmed in dismissing the petition holding that the action by church authorities was binding on the courts and, therefore, *the plaintiffs had no property rights and no standing in court.* Justice Schaffer stated that the crux of the case was the question, is church membership a temporal or spiritual matter? : page 497. He states that this was a case of first impression in Pennsylvania (page 499), and reaches the conclusion that the question is an ecclesiastical matter and, therefore, beyond the scope of the civil courts : page 501. He relied upon the Seibert case and also decisions from the appellate courts of New York, Kentucky and California, the last of which involved a Presbyterian Church.

The above cases were relied upon in Merman v. St. Mary's Greek Catholic Church, 317 Pa. 33, and its companion of Salak v. St. Mary's Greek Catholic Church, 317 Pa. 39, wherein it is held that a person loses his right as a corporator when excommunicated from the church. To the same effect are Takach v. Molchany, 318 Pa. 65, and Tsenoff v. Nakoff, 326 Pa. 549, in cases involving priests who had been unfrocked.

The last cases in the line of decisions holding that membership in a church is an ecclesiastical matter in which civil courts cannot become involved, are: Canovaro v. Brothers of The Order of Hermits of St. Augustine, 326 Pa. 76, 85, and Post v. Dougherty, 326 Pa. 97, 101. In the Canovaro decision, Justice Kephart

points out that the policy of the Act of April 26, 1855, P. L. 328, vesting lay control in church property, which was a part of the situation of many of the earlier cases, was uprooted by the Act of June 20, 1935, P. L. 353, making supreme the internal rules of religious societies for the control of property: page 88. It is to be noted that in this case the aggrieved parties had apparently exhausted all internal remedies provided for in the Roman Catholic Church: pages 79-80.

We believe that the attorney for the complainant in this case agrees that if this is an ecclesiastical matter, then the law courts have no jurisdiction. It is the contention of the complainant, however, that the facts in his case do not fall within the type of questions decided in the cases we have hereinbefore set out.

There are times when the civil courts will adjudicate matters involving churches and their members if a property right is involved, such as in the case of Kaminski v. Hoynak, 373 Pa. 194. In the opinion of this court, it would take a great stretch of the term "property rights" to find that plaintiff in this case has any property rights involved.

Generally speaking, there is also a general rule that a court will not entertain jurisdiction to review the propriety of the expulsion of the member of an unincorporated society or an association until he has exhausted his internal remedies. This same rule, we believe, is applicable to a church. In a case of Falsetti v. Local Union No. 2026 U. M. W. A., 400 Pa. 145 the court indicated that the only time they would take action would be when it was impossible to secure relief within the organization, and this would especially be true from a practical sense if the injury done him was irreparable or if the action taken by the organization is such as to preclude an appeal. The facts in this case do not impress the court as coming under any exception which would give jurisdiction to the civil court.

This court believes that if an attempt is made to deprive the complainant of his membership in the church, defendant *should be cautioned* to proceed according to the rules and regulations of the church. To issue an injunction, however, prohibiting the administrative commission from depriving him of his membership, we believe would be improper action. In the complaint filed, plaintiff states that the commission said that they would take action to terminate his membership. Whether or not his membership should be severed is certainly something that should be properly determined in a proper and legal manner, and, if it is not, as we have heretofore stated, it is a matter which he could appeal to the next higher court, to wit, the synod.

For this court to make a determination to the effect what defendant did in this case was illegal and in no way impaired or affected the membership of plaintiff in the Homer City Presbyterian Church, and to direct that defendant be ordered officially to notify the Homer City Church to such an effect, appears to this court to be asking the court to censor, in effect, action or conduct on the part of the administrative commission which action or conduct affects no present right of which plaintiff has been denied.

It would also seem to this court that it would be highly improper for a civil court to attempt to censor an ecclesiastical body, unless there is something of a civil nature involved wherein the court definitely has jurisdiction, and, even then, to simply make an order of censor would appear to be most unusual.

Therefore, the opinion of this court is that there is no matter before the court wherein the court has jurisdiction and that this is a matter in which, if there are any rights the complainant has, these matters should be determined by the ecclesiastical courts of the church.

We would like to finally make mention of the fact that the Supreme Court of the United States has indi-

cated that lay courts, and even legislatures, have no authority to deal with ecclesiastical matters. The last pronouncement of this general subject is found in the case of Kreshik v. St. Nicholas Cathedral, 363 U. S. 190.

### Order

And now, August 16, 1961, the preliminary objections in this case are sustained and the complaint is dismissed.