Rockingham, }
  Dec. 1, 1908. }

BUNKER v. MANCHESTER REAL ESTATE AND MANUFACTUR-
ING CO.

A secret trust arising from a grantee's verbal agreement to reconvey real
  estate does not render the conveyance voidable by a creditor of the grantor,
  if the trust was terminated prior to his attachment of the premises as the
  grantor's property.

The fact that a conveyance of real estate was made upon an inadequate con-
  sideration is not conclusive proof of its fraudulent character.

The admission of immaterial evidence which has no prejudicial effect does
  not furnish sufficient cause for setting aside a verdict.

TRESPASS *quare clausum*.  Plea, the general issue, title to the
*locus*, and *res judicata*.  Trial by jury and verdict for the plaintiff.
Transferred from the October term, 1907, of the superior court by
*Chamberlin*, J.

In February, 1902, the plaintiff loaned $500 to Alice M. Bean
and took a warranty deed of the *locus* as security therefor.  The
understanding between the parties was that the plaintiff should
reconvey upon payment of the loan.  The plaintiff also agreed
that Gilman A. Bean, father of Alice, might cut his firewood on
the *locus* while she held it, and because of this collateral agree-
ment she did not at that time record her deed.  The plaintiff
knew that Alice was in pressing need of money, but was not
aware that she was insolvent.  Among others, Alice was indebted
to one Head, who was pressing her for payment at the time she
borrowed of the plaintiff, and continued to do so until early in
November, 1902, when he asked her to furnish security and was
informed that she had conveyed the *locus* to the plaintiff.  Head
then called upon the plaintiff and learned that she claimed to own
the land.  November 14, 1902, Alice told the plaintiff that she
would be unable to redeem.  The plaintiff thereupon agreed to
take the land in payment of her debt and recorded her deed.

November 25, 1902, Head sued Alice and attached the *locus* as
her property, the action being entered at the January term, 1903,
of the superior court.  Some time in January, 1903, Alice's father
obtained permission from the plaintiff to cut wood on the *locus*;
and on February 6, 1903, Head petitioned for an injunction to
restrain the plaintiff and the Beans from removing any wood from
the premises during the pendency of his suit against Alice, alleg-
ing among other things that the conveyance to the plaintiff was
fraudulent as to him.  On this petition the following decree was
made :  "The above entitled action having been duly served and

the defendants having appeared by their counsel, but no answer having been filed, now it is ordered and decreed that the plaintiff's bill be taken as confessed, that the said defendants and each of them be perpetually enjoined from taking any wood or timber from the land described in the plaintiff's bill under the pretended conveyance to said Julia A. Bunker, without prejudice, however, to any rights they or either of them may have to object to the levy by the plaintiff on said premises." Head recovered judgment against Alice at the October term, 1903, and levied on the *locus,* which was sold on the execution December 2, 1903, and came by subsequent conveyances to the defendants. The plaintiff objected to the sale and notified the purchaser that she owned the land.

Subject to the defendants' exception, one of the plaintiff's counsel testified that before the defendants purchased the land he told one Mead that there was great risk in buying it. The defendants also excepted to the denial of their motion for the direction of a verdict in their favor.

*Eastman, Scammon & Gardner,* for the plaintiff.

*G. K. & B. T. Bartlett,* for the defendants.

YOUNG, J. 1. It is unnecessary, to consider the defendants' contention that the plaintiff is estopped by the decree in the equity proceeding to deny that her deed is fraudulent as to the defendants, for the decree itself expressly reserves to her the right to litigate the title to the *locus.*

2. The plaintiff's agreement to reconvey whenever Miss Bean repaid the money she borrowed, and in the meantime to permit her father to cut his firewood on the *locus,* constituted a secret trust (*Watkins* v. *Arms,* 64 N. H. 99); but it does not necessarily follow from the fact that the trust existed when the conveyance was made that it existed when Head attached the land. If it had ceased to exist before the land was attached, the plaintiff's title is valid. *Weeks* v. *Fowler,* 71 N. H. 518, 520; *Mandigo* v. *Healey,* 69 N. H. 94, 95; *Smyth* v. *Carlisle,* 17 N. H. 417, 419; *Oriental Bank* v. *Haskins,* 3 Met. 332, 340. Whether or not the parties had terminated the trust before the land was attached is a question of fact, and was properly submitted to the jury, for it could be found that Miss Bean ceased to have any rights in the premises on November 14, 1902.

3. The fact that the jury found that the land was worth $250 more than the plaintiff paid for it is not equivalent to a finding that the conveyance was fraudulent as to creditors. Although the inadequacy of the consideration was relevant upon the issue of

fraud, it was not conclusive. *Norris* v. *Clark*, 72 N. H. 442, 444; *Eastman* v. *Plumer*, 46 N. H. 464, 479; *Washband* v. *Washband*, 27 Conn. 424; 20 Cyc. 520. The defendants therefore take nothing by this finding, for it is not inconsistent with the general verdict for the plaintiff.

4. If it is conceded that the defendants' exception to the evidence is broad enough to include the objection they now make to it,—that there is nothing to show that Mead, with whom the witness talked, was their treasurer,—and that the evidence is merely an attorney's opinion of the effect of the decree in the equity proceeding, and for that reason irrelevant, it does not follow that the verdict should be disturbed. The record title to the property was in the plaintiff; the defendants could defeat her action only by showing that the deed from Miss Bean to her was fraudulent. As to that issue the defendants' knowledge of the record was immaterial, and the jury should have been so instructed at some time in the course of the trial. There can be no presumption, therefore, that the evidence produced the verdict. Consequently, the error incident to its admission furnishes no sufficient reason for setting aside the verdict; for to justify such a proceeding it must appear that the evidence was both immaterial and prejudicial. *State* v. *Danforth*, 73 N. H. 215; *Smith* v. *Morrill*, 71 N. H. 409; *Rogers* v. *Kenrick*, 63 N. H. 335. This conclusion is based on the proposition that the jury found that Mead, with whom the witness talked, was the defendants' treasurer. Of course, if the jury did not find that Mead was the treasurer, they could not consider the evidence for any purpose, and would have been so instructed if the defendants had so requested.

*Exceptions overruled.*

All concurred.