THE PUBLIC SERVICE TRAFFIC BUREAU, INC., *v.*
THE HAWORTH MARBLE CO.

(Decided November 2, 1931).

*Messrs. Thompson, Hine & Flory,* for plaintiff in
error.

*Messrs. Cannon, Spieth, Taggart, Spring & Annat,* for defendant in error.

LEVINE, P. J. Error proceedings were instituted in this court by the Public Service Traffic Bureau, Inc., seeking a reversal of the judgment of the municipal court of Cleveland, wherein a demurrer to plaintiff's petition was sustained. In order to determine the correctness of the court's holding, it becomes necessary to examine into the allegations of plaintiff's petition and to determine from these allegations whether or not a cause of action was set forth. In substance the petition states that plaintiff and defendant entered into a written contract, a copy of which is attached to the petition, by the terms of which the Haworth Marble Company, defendant, authorized and directed the Public Service Traffic Bureau, Inc., plaintiff, to audit and analyze the said subscriber's freight bills for the past three years, and to prepare, file, *prosecute* and adjust in the name of the subscriber all claims developed on such freight bills, as well as to take the necessary procedure to effect all possible rate and classification reductions on the subscriber's shipments. The Public Service Traffic Bureau, Inc., agreed to defray the necessary expenses in connection with the work outlined above. In consideration of the services performed or to be performed, and the expenses to be incurred by the Public Service Traffic Bureau, Inc., the subscriber (meaning The Haworth Marble Company) agrees that the Public Service Traffic Bureau, Inc., shall retain or receive from the savings resulting from any reductions effected, for a period of one year after such reductions be-

come effective, and from the recoveries secured, the sum of $200, and all excess shall be divided on a fifty-fifty basis. There are other provisions in the contract which for our purposes need not be set forth.

The petition alleged that the plaintiff in error was a New York corporation, carrying on the business of freight traffic and rate experts; that defendant in error was engaged in selling marble for construction purposes, and shipped large quantities of marble from the quarries into the state of Tennessee, and to cities of the Middle Western States, including Cleveland, Ohio, and Detroit, Michigan; that on or about January 23, 1929, plaintiff in error entered into an agreement in writing whereby plaintiff in error agreed to examine and analyze freight bills of defendant in error on shipments made by defendant in error during the three-year period preceding the date of said agreement, and whereby plaintiff in error further agreed to "prepare, file, prosecute and adjust all claims developed on such freight bills, as well as to take the necessary procedure to effect all possible rate and classification reductions on the defendant in error's shipments."

The petition further recites that pursuant to said agreement plaintiff in error did examine the freight bills of defendant in error, and thereupon it immediately began negotiations with the Interstate Commerce Commission and with the carriers involved, which negotiations resulted in the carriers admitting that the rates theretofore charged were unreasonable, and in the carriers consenting to the publication of reduced rates to the points mentioned, by reason

of which publication of reduced rates the defendant in error as a shipper became entitled to payment by way of reparation for the overcharges made during the period of three years preceding the publication of the reduced rates.

The petition further alleges that plaintiff filed a complaint with the Interstate Commerce Commission for a reparation order in the total sum of $5,015.92, but that while said complaint was pending before the Interstate Commerce Commission, plaintiff was instructed by defendant to dismiss the same, with which instructions plaintiff complied, reserving its right to compensation as provided in said agreement.

To the foregoing petition, a demurrer was filed, on the ground that the same did not set forth a cause of action. It was contended by defendant, the Haworth Marble Company, that the written agreement as pleaded in the petition was void for the reason that it contemplated the practice of law by a corporation. The court in sustaining the demurrer upheld this contention of defendant.

The plaintiff in error admits the general proposition of law that a corporation is not authorized to practice law; that any contract entered into between a corporation and others contemplating the practice of law on the part of the corporation, in any phase whatsoever, would be declared void as against public policy. It is claimed, however, that a filing of claims with the Interstate Commerce Commission and practice before that body does not constitute the practice of law.

The proposition contended for by the plaintiff in

error is that, if a corporation obligates itself to practice only before an administrative body, not before a judicial body, its services rendered in fulfilling the contract do not constitute the practice of the law, and that the true test is whether or not the tribunal before which the appearance is made is an administrative or judicial body. In this we believe the plaintiff in error is correct. We are aware that in recent years the federal and state governments have devised means for the settlement and adjustment of disputes other than by resort to courts of justice. In carrying out this plan various commissions and boards have been provided for, and established, which perform these functions, and, generally speaking, practice before these extrajudicial commissions and boards is not confined to attorneys at law, as the principal reason for the creation of these bodies was to avoid the technicalities involved in court procedure.

The Interstate Commerce Commission was designed for the regulation of rates charged by interstate carriers, and for settlement of disputes between carriers and shippers.

In the case of *Louisville & Nashville Rd. Co.* v. *Sloss-Sheffield Steel & Iron Co.*, (C. C. A.), 295 F., 53, at page 56, affirmed in 269 U. S., 217, 46 S. Ct., 73, 70 L. Ed., 242, it was held: "The (Interstate Commerce) Commission is an administrative body. The validity of its proceedings is not dependent upon compliance with procedural rules as to pleading and practice which prevail in courts of law. It 'may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice.' "

The rules of the Interstate Commerce Commission, promulgated by it pursuant to statutory authority, provide that the following may practice before the commission:

"(a) Attorneys at law who are admitted to practice before the Supreme Court of the United States or the highest court of any state or territory or the District of Columbia.

"(b) Any person not an attorney at law who is a citizen or resident of the United States, who shall file proof to the satisfaction of the Commission that he is possessed of the necessary legal and technical qualifications to enable him to render valuable services before the commission and is otherwise competent to advise and assist in the presentation of matters before the commission."

It is quite clear, therefore, that the practice before the Interstate Commerce Commission is not confined to attorneys at law. There are other administrative boards and tribunals where the same rule obtains. Practice before the Commissioner of Patents is not confined to attorneys at law. See Revised Statutes, Section 487; Title 35, Section 11, U. S. Code. Likewise practice before the Treasury Department of the United States is not confined to attorneys at law. See Title 5, Section 261, U. S. Code, 23 Stats. at L., 258. Similarly, practice before the United States Board of Tax Appeals is not confined to attorneys at law.

We likewise sustain the contention of plaintiff in error that the collection of claims without resort to courts of law does not constitute the practice of law. While the petition in describing the character of the

service rendered by plaintiff in error confines its service to negotiations with interstate carriers and to appearance before the Interstate Commerce Commission, and does not entail services rendered in a court of justice, it seems to us, nevertheless, that the contract entered into between the parties rather than the services rendered determines the question herein involved. As is clearly apparent, the suit is based upon a written contract and if the contract by its very terms contemplates the prosecution of claims or actions before a court of justice by the plaintiff corporation, that would render such contract void and of no effect, as against public policy. In such event, the mere fact that the services actually rendered do not embrace appearance in courts of justice, or the prosecution of actions therein, but are confined exclusively to negotiations with interstate carriers and appearance before the Interstate Commerce Commission, would not aid plaintiff in error in validating its claim. Its claim rests upon the written contract. If the contract is valid, plaintiff in error may recover for the services rendered. If the contract is void *ab initio,* as against public policy, any action based thereon must fail.

We are therefore brought to the vital question determinative of this case. It entails the interpretation of a provision used in the written contract, wherein the obligation of plaintiff in error is set forth as follows: "To analyze defendant's freight bills on shipments made during a certain period of time and to prepare, file, prosecute and adjust all claims developed on such freight bills and to in-

troduce the necessary procedure to effect any and all possible freight and classification reductions on defendant's shipments."

Did this provision contemplate that the obligation of plaintiff in error was to be limited, in so far as the prosecution of a claim is concerned, to appearance before the Interstate Commerce Commission? The word "prosecute," as defined in Webster's New International Dictionary, is: "To seek to obtain, enforce, or the like by legal process; as, to prosecute a right or a claim in a court of law."

In Funk & Wagnall's New Standard Dictionary of the English Language (1926), page 1988: "To bring suit against, in a court, for redress of wrong or punishment of crime; carry on a judicial proceeding against; as to prosecute a criminal; to seek to enforce or obtain, as a claim or right, by legal process."

Plaintiff in error's counsel concede that in the parlance of lawyers this word is commonly understood to mean "to engage in a proceeding before a court, or to carry on litigation;" but counsel for plaintiff in error contend that this is not the exclusive meaning of the phrase "to prosecute." Citing Oxford Dictionary (1909), page 1489, "to prosecute" means "to follow, pursue, attend, follow up, persevere or persist in." Also see Standard Dictionary to the same effect.

It is undoubtedly true that the phrase "to prosecute," while it has a technical legal meaning, which is to bring suit in a court to redress a wrong, has been given in addition a broader meaning which does not confine the activity to instituting suits be-

fore courts of justice. We may well concede that the phrase "to prosecute" is susceptible of two meanings. It becomes necessary to analyze the nature and character of awards made by the Interstate Commerce Commission. Thus it has been held that an order of the Commission awarding reparation is not a cause of action nor in the nature of a judgment on which an execution may issue. It is, instead, an award of money damages, and is declared by statute to be evidence, and then only *prima facie* evidence of the facts found by the Commission. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents; nor does it in any wise work a denial of due process of law. See *Pittsburgh & West Virginia Ry. Co.* v. *United States,* (D. C., 1924), 6 F.(2d), 646.

When we examine this contract as a whole, the purpose appears clear. It will be noticed that the fourth paragraph of the written agreement reads as follows: "In consideration of the services performed, or to be performed, and the expenses incurred by Public Service Traffic Bureau, Inc., the subscriber (The Haworth Marble Company) hereby agrees that The Public Service Traffic Bureau, Inc., shall retain or receive, from the savings resulting from any reductions effected for a period of one year after such reductions become effective, and from the recoveries secured, the sum of. $200.00, and all excess shall be divided on a fifty-fifty basis."

The contract contemplated not merely the securing of an award from the Interstate Commerce Commission, because, as before stated, the award is

merely a rule of evidence, and then only *prima facie* evidence, of the facts found by the Commission. The mere award by the Interstate Commerce Commission could not possibly be regarded as a *recovery* of moneys. The contract contemplated "recoveries," and the fees to which the plaintiff corporation would be entitled depend in large measure upon "recoveries." It seems, therefore, that what the plaintiff corporation obligated itself to do was to take any and all steps necessary to obtain *recoveries*. When we construe the fourth paragraph of the contract together with the phrase "to prosecute," it makes it quite clear that it was not intended that the Public Service Traffic Bureau, Inc., confine its activities to auditing and adjusting freight bills, to adjusting claims and the securing of awards by the Interstate Commerce Commission, for under no circumstances would such award constitute a "recovery" of excessive rates paid by the Haworth Marble Company.

Counsel for plaintiff in error cite 13 Corpus Juris, 539, as follows: "Where a particular word or words, or the contract as a whole is susceptible of two meanings, one of which will uphold the contract or render it valid, and the other of which will destroy it or render it invalid, the former will be adopted so as to uphold the contract." (There are three columns of citations, from practically every jurisdiction, in support of the foregoing text.)

As already stated, we incline to the view that the phrase "to prosecute" is susceptible of two constructions, one of which confines the activity to instituting proceedings before a court of justice and the

other entails activities outside of courts. Upon the reading of the contract it would seem that the phrase "to prosecute" was used in a technical sense; namely, to institute proceedings before a court of justice in order to obtain *recoveries,* which is in part the very essence and purpose of the contract. If the parties intended the use of the phrase "to prosecute" in other than a legal or technical sense, then the petition should so allege. We find no allegations to that effect in the petition. It nowhere appears from a reading of it that the parties intended that the phrase "to prosecute," as used in this contract, should mean to engage in activities other than instituting proceedings in courts of law.

Upon the above consideration we are of the opinion that the petition was demurrable, and that the trial court was correct in sustaining the demurrer.

*Judgment affirmed.*

VICKERY, J., concurs.
WEYGANDT, J., dissents.