Merman et al. *v.* St. Mary's Greek Catholic
Church et al., Appellants.

Argued December 3, 1934. Before FRAZER, C. J., SIMP-
SON, KEPHART, MAXEY and DREW, JJ.

*Ben Branch,* with him *Leighton C. Scott* and *David
Davis,* for appellants.

*Daniel C. Donoghue,* with him *John G. Cipko, George I. Puhak, George A. Shutack* and *Frank X. York,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1935:

"The St. Mary's Greek Catholic Church of Nesquehoning, Pa.," was chartered August 31, 1910, by the Court of Common Pleas of Carbon County in this State. The application for the charter states "that the subscribers . . . with their associates and members having formed a congregation......for the purpose of worshipping Almighty God according to the divine faith, doctrine, discipline and usages of the Holy United Greek Catholic Church, and being desirous of becoming incorporated agreeably to the provisions of the act . . . approved the 29th day of April, A. D., 1874, and its supplements, do hereby declare, set forth and certify that the following are the purposes, objects, articles and conditions of their said formation as such congregation, for and upon which they desire to be incorporated. . . . 2d. The purpose for which said corporation is formed is the support of public worship, i. e., The Worship of Almighty God according to the faith, doctrines, discipline and usages of the Holy United Greek Catholic Church. It receives and adheres to the canonical books founded on the Old and New Testament as the divine and revealed word of God and communicated to the Holy Prophets and Apostles, and acknowledges the faith, traditions and decrees of the councils as received by both the Greek and Latin Church, to which faith, doctrine, traditions and decrees of council, all instruction in the church and school and family, shall be confined, and by whom all questions of faith and doctrine shall be decided and with which all books of worship and instruction in the congregation and schools shall accord. . . . 6th. The oversight and management of the said corporation shall be vested in twelve trustees, to be elected from the lay members of the corporation annually......and all property belong-

ing to said corporation, or which shall hereafter be bequeathed, devised or conveyed to it, shall not be taken, held or to enure, otherwise than subject to the control and disposition of the lay members of such church or corporation or congregation or such constituted officers or representatives thereof, as shall be composed of the majority of lay members."

By the decree of incorporation it is provided "that the said charter of incorporation......is hereby approved and upon the recording of the same and of this order, the subscribers thereto and their associates shall be a corporation by the name of the 'St. Mary's Greek Catholic Church of Nesquehoning, Pa.,' *for the purposes and upon the terms therein stated."* As already quoted "the purpose for which said corporation is formed is the . . . worship of Almighty God according to the faith, doctrine, discipline and usages of the Holy United Greek Catholic Church . . . to which faith, doctrine, traditions and decrees of the councils, all instruction in the church and school and family, shall be confined, and by whom all questions of faith and doctrine shall be decided." It follows that the lay membership of the church is limited, by the charter, to those who worship Almighty God according to the faith, doctrine, discipline and usages stated; and, since the trustees to be elected must be selected from "the lay members of the corporation" they, too, must be among those who worship according to the same faith, doctrine, discipline and usages.

It follows from this that the appeal is governed by German Reformed Church v. Seibert, 3 Pa. 282, wherein it is said at page 291: "By the charter none but members of the German Reformed Church of Heidelburg, citizens of the Commonwealth, are corporators; and as a person excommunicated [as the present appellants admittedly were] ceases to be a member, he loses his right as a corporator." A like conclusion is stated in St. Casimir's Polish R. C. Church's Case, 273 Pa. 494, 500, and by Krecker v. Shirey, 163 Pa. 534, 547, where it is said:

"Now it must be borne in mind that the organization of a denominational body or church involves the adoption of a religious creed, and an ecclesiastical policy. To abandon or to repudiate either is to abandon or secede from the body whose authority is thus disregarded."

Appellants say, however, "It is not asserted that the bishop is the proper authority to pronounce sentence of excommunication." This question is concluded by the pleadings. The petition averred "that the four defendants were excommunicated by the bishop of the diocese having jurisdiction of the matter, after due notice to the four named defendants" and these averments are of course admitted by the demurrer. Moreover, if these defendants felt they were aggrieved by the action of the bishop, their only remedy was by an appeal to the higher tribunals of the church: German Reformed Church v. Seibert, supra; Schlichter v. Keiter, 156 Pa. 119, 122; Acri v. Bruscia, 265 Pa. 384. This remedy they did not pursue.

At the time the present charter was granted there was no statute expressly authorizing the insertion in the charter of a provision limiting membership to those having a specified religious belief, nor was there any antagonistic statute. Later, by the Act of May 5, 1911, P. L. 172, and again by section 214 (1) of the Non-Profit Corporation Act of May 5, 1933, P. L. 289, 304, the insertion was expressly validated. However, as it is actually a provision of the charter, and is not unconstitutional nor clearly antagonistic to any express statutory provision, it must be obeyed by the corporators and their successors, until such a time, if ever, as it is amended by an appropriate judicial tribunal, or is overthrown in a direct attack by the attorney general. So far as appears no such attack, either direct or collateral, has ever been made upon the charter of this church, nor is one being attempted in the present action.

The proceedings under review were begun by a petition for a declaratory judgment, seeking to have it adjudged

that the individual appellants were debarred from their membership and trusteeship in the church, because they had been excommunicated from the Holy United Greek Catholic Church, by the bishop thereof. On service of the petition on respondents, they answered that "they have no objection to the court, if the court can, making an adjudication as to their respective memberships in the corporation known as and called St. Mary's Greek Catholic Church of Nesquehoning, Pa.," but deny the right of the court "to adjudicate as to their status with respect to the church spiritual,"—a matter not attempted in this proceeding. They further say that "if the court will determine as to the membership of respondents in said corporation, and as to their right to be officers thereof, then they suggest that their answer be decreed and considered as in the nature of a demurrer to the allegations of ouster and expulsion in the petition contained; as the respondents are advised and believe and, therefore, aver that even if all the facts alleged and averred in said petition were true and correct, yet nevertheless nothing therein stated constitutes or can constitute an effective ouster or expulsion of the respondent from membership in said corporation."

The judge of the court below treated this paper as a demurrer, as appellants requested him to do, and, as such, overruled it, and gave the individual appellants leave to answer over in 15 days. This they refused to do, whereupon the court below entered an order declaring that they "are no longer members of the St. Mary's Greek Catholic Church of Nesquehoning, Pa., by reason of the order of excommunication, and further that having lost their membership in said church by said excommunication order, they have no right to share in any of the church property, and further they have no right to membership in the church corporation, or to serve as officers of said church corporation, and further that by reason of this order of excommunication the said defendants have no right to participate actively in services in said church,

nor to participate, actively, as members of the church corporation." From that order the present appeal is taken.

In their argument in this court appellants expressly admit that their excommunication is conclusive, not subject to review by the courts, so far as concerns the church as an ecclesiastical organization, but deny that it has any effect so far as concerns their membership in the church as a corporation. They forget, however, that under the charter, as we have above interpreted it, the right to membership in the corporation itself, is tested by the same qualifications as are requisite for continued membership in the church as an ecclesiastical organization. Hence as admittedly appellants are conclusively deemed to be excluded from membership in the latter, by reason of their excommunication (German Reformed Church v. Seibert, supra) they must a fortiori be likewise excluded from membership in the corporation, and, for the reasons heretofore given, lose their positions as trustees and officers.

This conclusion is in accord with the Act of May 20, 1913, P. L. 242, which provides, in almost the exact language of the present charter, that the church "property, real or personal [with certain exceptions unimportant here] . . . shall be taken and held subject to the control and disposition of the lay members of such church, . . . which control and disposition shall be exercised in accordance with and subject to the rules and regulations, usages, canons, discipline and requirements of the religious body or organization to which such church . . . shall belong," which provision it is further said shall apply to all existing church corporations with the same effect "as if the said requirement had been inserted therein when the said charters were originally granted."

It is difficult to see how these individual appellants, resenting, as they do, their excommunication, and being out of friendly touch with the existing "rules and regulations, usages, canons, discipline and requirements" of

the parent body, as well those presently existing as these which may subsequently be adopted, can hope to be retained in the membership and offices which they held before they became recalcitrant. If this were other than a "church fight" we would be wholly unable to understand how they could desire to retain such membership and offices. At any rate, the statute, which, as it says, applies to this corporation with the same effect as if said requirement had been inserted in its charter, when the charter was originally granted, concludes the appeal of the individual appellants and obviates the necessity for our further review of the interesting but highly technical argument of their counsel on their behalf.

The appeal of the corporation itself probably could be quashed, since there is no decree against it, and hence it has, as yet, nothing from which to appeal. But since, as we have decided, the connection of the individual appellants with the corporation was properly terminated, the desire of the corporation to have them back,—which is the only reason alleged for its right to appeal at this time,—cannot avail to justify a sustaining thereof.

The judgment of the court below is affirmed.