Carroll,
Feb. 5, 1935.

WILLIS L. REYNOLDS, *Adm'r, & a. v.* LIZZIE M. CHASE.

*Cooper & Hall* (by brief), for the plaintiffs.

*Preston B. Smart,* for the defendant, furnished no brief.

ALLEN, C. J. The proceeding should be amended. A petition for a declaratory judgment is not maintainable upon issues determinable by resort to other available procedure. *Lisbon Village District* v. *Lisbon,* 85 N. H. 173, 174; *Baker* v. *Goodale,* 85 N. H. 561. The controversy here being outside the jurisdiction of the probate court (*Crockett* v. *Sibley,* 73 N. H. 322; *Patten* v. *Patten,* 79 N. H. 388, 392; *Rockwell* v. *Dow,* 85 N. H. 58, 66; *Robinson* v. *Carroll, ante,* 114), the plaintiff administrator may interplead the heir and defendant claimant. *Barrett* v. *Cady,* 78 N. H. 60, 63; *Dover &c. Bank* v. *Estate of Tobin,* 86 N. H. 209.

If the defendant's claim might be embraced within "demands which the deceased owed" (P. L., c. 303, s. 12), entitling it to be passed upon by a commissioner appointed in administration of an estate in the insolvent course, the administrator is not required to seek a decision in that manner. The estate is solvent and when there is solvency, the administrator may elect whether there shall be an insolvent course of settlement.

As to the real estate, the legal title to which has vested in the heir, he may maintain a bill to relieve it from the cloud of the defendant's claim. *Tucker* v. *Kenniston,* 47 N. H. 267, 270; P. L., c. 317, s. 3.

Proceeding upon the agreement for such an amendment as may be requisite to obtain a decision of the matters in controversy (*Lisbon Village District* v. *Lisbon, supra,* 174; *Tirrell* v. *Johnston,* 86 N. H. 530, 532), the plaintiffs do not question the general validity of the

contracts, but say that the provision for the intestate's property upon her decease to become the defendant's is an attempted testamentary disposal, is not an agreement to make it effective by a will, and does not serve to establish a claim against the estate.

Respecting the first point, the terms of the contract are all of stated obligations. They consist only of mutual "covenants and agreements." No thought of testamentary disposal appears. In effect any purpose that the clause be considered a will is disclaimed.

The contract does not set forth how the intestate's property was to become vested in the defendant upon the former's death. No arrangement for instruments of title and no means and methods of transfer are made matters of specific treatment. The property turned over when the contract was made passed in title by the contract itself. It was thereby expressly assigned and conveyed. There were no stipulations for confirmatory documents in better evidence of the transfer, although the call for them could not be very doubtful in respect to real estate and intangible personalty. In like manner no plan was prescribed for effectuating the transfer of the property remaining upon the death of the survivor of the first parties.

It was evidently thought that the contract would serve to avoid any need of judicial administration of the first parties' estates. The mistaken assumption that administration would be unnecessary adds force to the evidence that the contract was not made in part as a will. If it had been thus considered, a judicial settlement of the estates would have been foreseen as a normal incident and outcome of testacy. The omission to provide therefor is a clear indication of the absence of testamentary purpose. Neither the terms of the contract nor its implied intendments give any countenance to a testamentary character of any part of it.

Nor, on the other hand, is any agreement to make a will found in the contract. One by contract may obligate his estate to make transfers or payments without thereby taking testamentary action or agreeing to do so. The agreement for title to the remaining property to pass upon the owner's death created a contractual claim for it at that time. There was no understanding that a will was to be made. It is almost inconceivable that a promise of one would not have received explicit statement if one had been intended.

The validity of the clause for transfer after death is unaffected by any erroneous notion that an intestate settlement of the estates would not be needed to carry out the transfer. If it was thought that the contract would operate to accomplish the transfer as well as to direct

it, the mistake was not one relating to essentials and did not defeat the objectives of the contract. It related to a detail of method, and not to a purpose to be achieved.

The second contract discharged the estate of the intestate's father from liability under the first one, and the defendant may not successfully assert any failure of the intestate to do in her lifetime all that she had undertaken to do.

The remaining objection to the enforcement of the clause is broadly that it is unfair and unreasonable. It is argued that contracts for support have some peculiar qualities so that an agreed consideration for the support will not be upheld beyond the fair value thereof. The proposition is too manifestly at odds with all the authority of the law for the observance of contractual obligations to entitle it to any recognition. It attacks the validity of a contract to the extent greater benefits accrue to one party to it than the other. The confinement of the attack to a particular class of contracts does not better it. Freedom of action in providing for one's support is as important as in other transactions. Neither equity nor common law knows of any policy to regulate ordinary contracts fairly entered into, and a rule permitting partial repudiation in order to equalize benefits and burdens would be an inroad upon the foundation of contractual liability. Inadequacy of consideration has no effect upon validity, unless indirectly as evidence bearing upon some element of validity. *Sanborn* v. *French*, 22 N. H. 246, 249; *Flannagan* v. *Kilcome*, 58 N. H. 443; *Bunker* v. *Company*, 75 N. H. 131.

No failure of contractual elements is asserted. No claim is made of any misconduct or bad faith chargeable to the defendant, of any mistake or misunderstanding concerning the terms of the contract in their substantial purposes or of the facts inducing the contract, or of any conduct of the defendant giving the administrator the right to rescind. The plaintiffs' only position is that a public policy exists to limit the defendant to a reasonable payment for her services without regard to the parties' own accord for payment.

The only difference between the common law and equity in respect to inadequacy of consideration is that in equity it may be a reason for denying relief. *Powers* v. *Hale*, 25 N. H. 145; *Eastman* v. *Plumer*, 46 N. H. 464, 478, 479. The validity of the contract is not assailed, but the plaintiff may resort only to his common-law remedies. The distinction is not here presented as an issue of remedial procedure. The defendant has a contractual claim to the intestate's property which would otherwise go to the heir. Whether she receives the

property or its value does not appear to be of material moment, and no instruction is sought in respect thereto.

In brief observation, it may be noted that the pleadings set forth no claim of inadequacy. How much the defendant and her husband received at the outset is not shown. A charge of fifty cents a day for support for each of the first parties was over-balanced by a countercharge of eighty-three cents a day for each during the entire period of nearly fourteen years. The defendant's obligations upon the intestate's death exceed $1,000 and may be more than $2,000. In net result it does not appear that the contract is one-sided.

As the contract is construed, the intestate's property or its value upon transfer to the defendant will be impressed with a trust as security for the discharge of her obligations arising upon the intestate's death. The contract contemplated that the property should be used for that purpose, and not for other purposes until the obligations were fulfilled.

*Case discharged.*

All concurred.