## PELTON v. McCLAREN RUBBER CO. et al.

No. 2036.

Court of Civil Appeals of Texas. Waco.

Oct. 6, 1938.

Rehearing Denied Oct. 27, 1938.

Clark & Stegall, of Fort Worth, for appellant.

Ungerman & Ungerman and David M. Weinstein, all of Dallas, and Bonner, King & Dawson, of Wichita Falls, for appellees.

ALEXANDER, Justice.

H. E. Pelton brought this suit against McClaren Rubber Company, J. A. Cato and others to recover certain compensation alleged to be due him under a contract between himself and McClaren Rubber Company, by which the latter employed him to collect an indebtedness owing to McClaren Rubber Company by J. A. Cato. The trial court instructed a verdict for the defendants and the plaintiff appealed.

The material facts are these: J. A. Cato was indebted to McClaren Rubber Company of Charlotte, North Carolina, in a sum of approximately $5,000, evidenced by a promissory note. Ungerman & Ungerman, attorneys, had brought suit on the note for McClaren Rubber Company against Cato in a district court in Dallas county. Pelton, who was not a lawyer, was

engaged in operating a regularly licensed collecting agency in the city of Fort Worth. He contacted Ungerman & Ungerman and undertook to induce them to employ him to assist in collecting the indebtedness but was unsuccessful. Shortly thereafter, on July 10, 1935, Pelton wrote McClaren Rubber Company at Charlotte, North Carolina, as follows:

"About three weeks ago your attorneys at Dallas filed suit against J. A. Cato this city, on a note in the amount of $4,723.73 plus costs, interest and attorneys fees.

"I have made two trips to see Ungerman & Ungerman in Dallas but apparently they are not interested in collecting this debt, therefore this letter.

"I have a few judgments against this man Cato and can collect yours also for a reasonable fee, but I'm no lawyer. In collecting this for you I can assure you there will be no costs to you such as garnishment fees, attachment or execution fees, if you will let me collect same. Your attorneys seem to think they are in a position to collect this money for you but like I told them they are lawyers and not collection men. I have uncovered some things on Cato that everyone does not know and am in a real position to collect for you also.

"I saw one Mr. Ungerman about 10 days ago and at that time he advised me to come back so yesterday I went back and he was not there but his brother talked to me and said he would not be interested in letting anyone help them. If you will give me a chance I can show you how to collect this money. I do not want a interest in your judgment or law suit merely if I'm successful in collecting same would like to have 25%. My time, trips and etc. amount up and I believe you will agree this fee would not be excessive. Kindly let me hear from you immediately."

At that time McClaren Rubber Company declined to place the account with Pelton, but after some further correspondence, on September 5, 1935, McClaren Rubber Company's auditor wrote Pelton authorizing him to handle the collection on a basis of thirty per cent for his services, said letter concluding as follows: "We recommend that you take this up with Attorneys Ungerman & Ungerman, Wilson Building, Dallas, Texas, so there will be no misunderstanding with them. Yours very truly, McClaren Rubber Company (Signed) E. L. Antonen, Auditor." On September 6th,

Ungerman & Ungerman entered into a settlement agreement with Cato. On the same day, Pelton, without having first conferred with Ungerman & Ungerman and without knowledge of the settlement agreement, employed an attorney to intervene in a certain receivership proceeding then pending in Tarrant county for the purpose of collecting said claim and took other steps along the same line. McClaren Rubber Company refused to recognize any liability to Pelton under the contract.

We are of the opinion that the trial court correctly instructed a verdict for the defendants. The evidence shows without dispute that Pelton secured his contract of employment by personal solicitation in violation of the terms of the barratry act, and, as a consequence, his alleged contract was void as against public policy and unenforceable. Our Penal Code, art. 430, reads, in part, as follows: "Whoever * * * shall seek to obtain employment in any claim to prosecute, defend or collect the same by means of personal solicitation of such employment, or by procuring another to solicit for him employment in such claim * * * shall be fined not to exceed five hundred dollars, and may in addition thereto be imprisoned in jail not exceeding three months. The penalties herein prescribed shall apply not only to attorneys at law, but to any other person who may be guilty of any of the things set forth in this article."

By the plain provisions of the above statute it is made illegal for anyone, be he either lawyer or layman, to seek by personal solicitation to obtain employment to collect a claim. McCloskey v. Tobin, 252 U.S. 107, 40 S.Ct. 306, 64 L.Ed. 481. The undisputed evidence shows that Pelton secured his contract of employment to collect the claim in question by personal solicitation in violation of this law. His purported contract was therefore void and unenforceable. 6 Tex.Jur. 358; 10 Tex. Jur. 187, 190, 232; Ford v. Munroe, Tex. Civ.App., 144 S.W. 349; Broadway v. Miller, Tex.Civ.App., 288 S.W. 627; Cox v. Watelsky, 27 Tex.Civ.App. 478, 66 S.W. 327; Hennessy v. Automobile Owners' Ins. Ass'n, Tex.Com.App., 282 S.W. 791, par. 1, 46 A.L.R. 521; Restatement of the Law on Contracts, Vol. 2, Chap. 18, sec. 512, p. 985, sec. 580, p. 1087.

Appellant contends that since he was engaged in operating a collecting agency in compliance with the laws of this

state, he was, by virtue of the provisions of Vernon's Ann.P.C., art. 430a (Acts 1933, 43rd Leg., Reg.Session, p. 835, chap. 238), exempted from the above quoted provisions of the barratry act. The material part of said article 430a reads as follows:

"Section 1. It shall be unlawful for any corporation or any person, firm, or association of persons, except natural persons who are members of the bar regularly admitted and licensed, to practice law.

"Definition.

"Sec. 2. For the purpose of this Act, the practice of law is defined as follows: Whoever * * * (e) As a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense; is practicing law. * * * Provided that subdivision (e) hereof shall not prohibit any individual, company, corporation or association, owning, operating, managing or controlling any collecting agency * * * within this State, subject to an occupation tax under Article 7061 * * * from furnishing reports and collecting, securing, settling, adjusting or compromising, out of court, defaulted, controverted or disputed accounts or claims growing out of contractual relations * * *."

The above quoted article is broad enough to permit properly authorized collecting agencies to adjust, settle or collect claims, but it does not undertake to grant to such agencies or to any one else the authority to solicit employment in such matters or do any of the other things specifically prohibited by Penal Code, art. 430, as above referred to. The court therefore did not err in instructing a verdict for the defendants.

Appellant charges in his brief that the trial court interrupted him and gave an instructed verdict for the defendants while plaintiff was offering his evidence in chief and before he had concluded same. The judgment, however, recites that the plaintiff had rested before the instructed verdict was given, and there is nothing in the record to show the contrary. This assignment is overruled.

The judgment of the trial court is affirmed.