## SOUTHERN TRAFFIC BUREAU v. THOMPSON.

## THOMPSON v. SOUTHERN TRAFFIC BUREAU.

No. 12109.

Court of Civil Appeals of Texas.
San Antonio.
June 21, 1950.

Rehearing Denied Aug. 30, 1950.

Fischer, Wood, Burney & Glass, Corpus Christi, Smith & Oakleaf, McAllen, John C. North, Jr., Corpus Christi, L. Hamilton Lowe, Austin, for appellant.

Strickland, Wilkins, Hall & Mills, Mission, for appellee.

NORVELL, Justice.

This suit involves the legality and validity of a method of operation adopted by Southern Traffic Bureau in presenting and prosecuting claims against rail carriers. A cross appeal is involved, but for convenience we will refer to Southern Traffic Bureau as the appellant and Guy A. Thompson as appellee. Thompson is the trustee for a group of railroads known as the Missouri Pacific Lines, appointed in accordance with Section 77 of the Bank-

ruptcy Act, 11 U.S.C.A. § 205. He filed this suit in behalf of certain carriers and later intervened on behalf of others. The distinction between plaintiffs and interveners is not pertinent here. The Texas and New Orleans Railroad Company also intervened, but its asserted cause of action was severed from the present suit and it is not a party to this appeal. The Southern Traffic Bureau, defendant below, is a partnership composed of W. M. White, W. M. White, Jr., and other members of the White family, and is engaged in the business of preparing and presenting claims against rail carriers arising out of delays in transit, breakage of containers, failure to carry out shipping instructions and similar matters relating to the shipment of fruit and vegetables. The appellee contended that the bureau's operations are violative of the law against barratry, Article 430, Vernon's Ann.Penal Code, and that it unlawfully engages in the practice of law.

Trial below was to the court without a jury. Upon request findings of fact and conclusions of law were prepared and filed. The judgment in the main was favorable to appellee. A perpetual injunction was granted, restraining the bureau from soliciting claims against appellee and from doing other specified acts set out in seven numbered paragraphs of the decree. The court also granted further relief by way of a declaratory judgment. Article 2524—1, Vernon's Ann.Civ.Stats. This portion of the judgment consists of eleven paragraphs lettered a to k, inclusive.

Appellant submits 64 points of error and the appellee presents two cross-points. It is obviously impossible to discuss all of these points seriatim and keep this opinion within reasonable bounds. We believe, however, that the issues of the case naturally divide themselves into certain grand divisions which may be expeditiously discussed and disposed of.

The injunctive portion of the decree provided that, "Southern Traffic Bureau and W. M. White, Sr., W. M. White, Jr., Cecil White, Bernice White and Jack White, their agents, servants and employees be, and they are hereby perpetually enjoined:

"(1) From in any manner soliciting employment to present, prosecute, settle, collect, adjust or compromise any claim or claims (other than freight rate claims) against Plaintiff or Intervener in which they have no interest, for their own profit, and from procuring others to solicit such employment for them.

"(2) From examining the files or records of any person, firm, association or corporation for the purpose of ascertaining or determining whether such files or records disclose a claim (other than freight rate claims) against Plaintiff or Intervener which is cognizable at law.

"(3) From advising any person, firm, association or corporation that they have a claim (other than freight rate claims) against Plaintiff or Intervener or such a claim which the Courts will enforce.

"(4) From filing any claim (other than freight rate claims) against Plaintiff or Intervener, on behalf of any other person, firm, association or corporation, either in Court or with Plaintiff or Intervener or any servant, agent, employee or other representative of Plaintiff or Intervener.

"(5) From representing any other person, firm, association or corporation in the prosecution of a claim (other than freight rate claims) against plaintiff or Intervener and from representing any other person, firm, association or corporation in any effort or attempt to collect any claim (other than freight rate claims) from Plaintiff or Intervener, or attempting to settle, adjust or compromise any such claim.

"(6) From advising any person, firm, association or corporation asserting a claim against Plaintiff or Intervener as to whether the same should be settled, adjusted or compromised and from advising such claimant whether a suit should be filed in Court on such claim if it be rejected by Plaintiff or Intervener or not compromised, adjusted or settled by them.

"(7) From threatening, on behalf of any other persons, firm, association or corporation, to file suit against Plaintiff or Intervener, in the event any claim filed by or on behalf of such person, firm, associa-

tion or corporation is not paid, adjusted settled or compromised."

The obvious basis of the first numbered paragraph of the injunctive portion of the decree is the barratry statute, Art. 430, P. C., which in part provides that: "Whoever shall, for his own profit or with the intent to distress or harass the defendant therein, wilfully instigate, maintain, excite, prosecute or encourage the bringing, in any court of this State, of a suit at law or equity in which he has no interest; * * * or shall willfully instigate, maintain, excite, prosecute or encourage the bringing or prosecution of any claim in which he has no interest, for his own profit or with the intent to distress or harass the person against whom such claim is brought or prosecuted; or shall seek to obtain employment in any claim to prosecute, defend or collect the same by means of personal solicitation of such employment, or by procuring another to solicit for him employment in such claim; * * * shall be fined not to exceed five hundred dollars, and may in addition thereto be imprisoned in jail not exceeding three months. The penalties herein prescribed shall apply not only to attorneys at law, but to any other person who may be guilty of any of the things set forth in this article. * * *"

In the case of McCloskey v. San Antonio Public Service Co., Tex.Civ.App., 51 S.W.2d 1088, this Court held that when the property rights of an individual or corporation were threatened by the solicitation and prosecution of claims against it in contravention of the barratry law, an injunction would lie to restrain such action. It was held that while, as a general rule, an injunction does not lie to restrain the violation of a penal statute, there is a well recognized exception to the rule. Whenever the commission of acts denounced as wrongful by the penal code results in the invasion of the property rights of another, the injured person may protect himself by injunction. See also, Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270; Ex parte Allison, 48 Tex.Cr.R. 634, 90 S. W. 492, 13 Ann.Cas. 684, 3 L.R.A.,N.S., 622; Ramon v. Saenz, Tex.Civ.App., 122

S.W. 928; Featherstone v. Independent Service Station Ass'n of Texas, Tex.Civ. App., 10 S.W.2d 124. The holding in the McCloskey case was approved by the Supreme Court, as evidenced by its outright refusal of a writ of error.

The trial court in effect found that appellant had in the past and would in the future, unless restrained, solicit claims against the appellee. These findings fully support the first paragraph of the restraining portion of the decree above quoted. Appellant however asserts that these findings are not supported by the evidence. There was direct evidence of the solicitation of business. Letters written upon the letterhead of Southern Traffic Bureau were introduced in evidence in which persons were advised that the firm was in business, had a good record for settling "big claims," and would make a railroad carrier "pay one way or another." It was shown that the appellant had placed advertisements seeking business in trade magazines and publications.

Under the Texas authorities it can not be seriously urged that no violation of the barratry law had taken place. At one time the barratry law was applicable only to attorneys at law. This defect was pointed out by this Court in McCloskey v. San Antonio Traction Co., 192 S.W. 1116, and remedied by the Legislature. McCloskey v. San Antonio Public Service Company, Tex.Civ.App., 51 S.W.2d 1088. In Pelton v. McClaren Rubber Co., Tex. Civ.App., 120 S.W.2d 516, 517, wr. ref., Mr. Justice Alexander (later Chief Justice of the Supreme Court) made the following clear and unequivocal statement in regard to the barratry statute: "By the plain provisions of the above statute (Art. 430 P.C.) it is *made illegal for anyone, be he either lawyer or layman,* to seek by personal solicitation to obtain employment to collect a claim. McCloskey v. Tobin, 252 U.S. 107, 40 S.Ct. 306, 64 L.Ed. 481."

As to injury to appellee, we are also of the opinion that the evidence was sufficient to raise an issue for the trial court's determination. There was testimony to the effect that appellant had presented claims

to the carriers which had no factual basis for liability and others for excessive amounts.

In the recent case of Thompson v. Larry Lightner, Inc., 230 S.W.2d 831, decided by this Court on May 3, 1950, we held that Thompson as trustee for a number of rail carriers was not entitled to an injunction against a claims agency as the trial court found (and the finding was not challenged on appeal) that the property rights of Thompson as trustee had not been invaded nor had he suffered any pecuniary loss or injury because of any acts of the claims agency. Appellant in effect argues that even though solicitation be shown, no invasion of appellee's property rights is disclosed, unless it further appears that as a result of such solicitation a particular claim against a carrier was secured and that said claim had no sound basis in law or in fact or was for an excessive amount. In our opinion this particularity of proof was not required. Appellant's unlawful solicitations were designed to secure claims. We may safely infer that the intended result was accomplished. Under the evidence the trial court was authorized to find that appellee's property rights were adversely affected by illegal actions on the part of appellant.

In our opinion the first paragraph of the injunctive decree should be sustained. We are not in full accord with the trial court's analysis of the bureau's operations and this difference will be discussed in the latter part of this opinion. We may say here that it seems to us that the first paragraph of the injunctive portion of the decree relates to the restraining of acts denounced as wrongful by the barratry statute. Closely connected with the solicitation of claims are such acts as instigating others to file lawsuits against appellee and threatening the instigation of such suits. Such actions are barratrous in nature and the paragraph of the decree now under discussion will be modified so as to include an order restraining such actions.

The presence of the exception relating to freight rate claims in the paragraph of the decree above quoted evidently arises from the fact that no injunction was sought against appellant insofar as this particular species of claim is concerned. Appellee, in his brief filed in support of his cross-points, says that he is not complaining of the trial court's action in excluding freight rate claims from the decree's restraining provisions. We make this explanation so that a holding will not be implied from our approval of the paragraph discussed that solicitation of freight rate claims is permitted by the barratry statute. Such claims are not involved in this suit.

In order to properly discuss the injunctive orders contained in numbered paragraphs 2 to 7, inclusive, above set out, it is necessary to consider in some detail the method of operating or doing business adopted by the appellant and participated in to some extent by the carriers.

It appears that W. M. White has been in the business of presenting and adjusting claims against rail carriers arising out of fruit and vegetable shipments for a period of over twenty years. He first began operations in Poteet, Texas, and organized the Southern Traffic Bureau as a family affair. A few years ago he moved the principal office of the bureau to Harlingen, Texas, which is located near the center of the fruit and vegetable growing areas of the Lower Rio Grande Valley. W. M. White and his son, W. M., Jr., are the active negotiators of settlements and no one connected with the bureau is a licensed attorney at law. In addition to claims originating from shipments from the Lower Rio Grande Valley, the bureau also handles claims arising from shipments from the Laredo Winter Garden, Coastal Bend and East Texas fruit and vegetable growing districts.

The bureau is now serving some fifty shippers regularly, and as compensation it generally receives twenty-five per cent of the recovery against the carrier.

The first step in the established course of operations is the examination of the shipper's files by a representative of the bureau. Certain of these files are selected by the shipper and sent to the bureau for examination; or a representative of the bureau calls at the place of business of the

shipper and goes over the files for the purpose of ascertaining whether or not a probable claim exists.

Each file relates to a separate car and usually contains the bill of lading, the manifest showing what was loaded into the car, inspection certificates, diversion orders, shipping instructions and protests, if any, an account of the sales of the contents of the car, and such other papers or documents as may relate to the shipment. Claims for fruit and vegetable shipments generally fall into three categories, i. e., those arising from delays in transit; those arising from a failure to carry out shipping instructions, such as failure to comply with refrigeration and ventilating orders and the like, and those arising from rough handling of the shipment, such as breakage of containers, bruising of the contents and similar damage. The "protest" is a document or paper delivered to the carrier after inspection by the consignee showing the condition of the contents of a car so as to give the carrier an opportunity to also make an inspection of its contents. From the evidence, it is indicated that in addition to the information usually contained in the file it is necessary for an examiner to have a detailed knowledge of train schedules, and sales prices and opening hours of various markets throughout the United States, in order to ascertain whether or not a probable claim for damage exists.

If, upon examination of the shipper's file, probable liability on the part of the carrier is indicated, a "claim" is filed with the carrier under the provisions of Section 2b of the bill of lading. The nature of this "claim" will be hereinafter discussed. It is sufficient to say here that it may be either a simple notice or a detailed document. It may contain sufficient information so that the carrier may check its records, acknowledge liability for a certain sum and return a check for that amount. If the claim is not settled in this manner or by means of a comparatively small amount of correspondence, it is subjected to a process known as "conferencing." A representative of the bureau and a representative of the carrier, neither of them

lawyers, meet and go over their respective files together.

It appears that the American Railway Association, in order to obtain uniformity of practice in the settlement of freight claims by carriers, had adopted an elaborate set of rules for the guidance of railway freight claim agents. These rules are known as "Principles and Practices for the Investigation and Disposition of Freight Claims." Said rules are based partly upon the applicable law relating to such claims and partly upon expediency. They are designed for the expeditious and uniform handling of claims. The representatives of the appellant bureau are thoroughly familiar with these "Principles and Practices" and claims are "conferenced" in accordance therewith.

As a result of the conference, the freight claim agent of the carrier may agree to pay the claim, deny all liability or offer to settle the claim for a certain amount. The representative of the bureau likewise makes offers of settlement. It appears that in some cases he may accept offers of settlement without further consultation with the shipper whom he represents. In others he may refer the offer of settlement back to the shipper. If the claim is declined by the carrier's representative, it is returned to the shipper, sometimes with the bureau's recommendation that suit be filed thereon. In the event suit is instituted, the representatives of the bureau are often used by the shipper as expert witnesses. It is indicated that there are other organizations similar to appellant, engaged in presenting like claims against carriers. It is not shown that members of the legal profession have undertaken the handling of such claims from the examination of the shipper's files to final conclusion.

With the exceptions noted, numbered paragraphs 2 to 7, inclusive, of the injunctive portion of the decree relate to the assertion that the bureau is unlawfully practicing law. The trial court's view of the actions of the bureau is, we believe, accurately stated in appellee's brief, as follows: "Everything appellants did was but a part of a single transaction conceived and carried out by appellants for the sole

purpose of soliciting employment to ferret out alleged claims against appellee and in a representative capacity to prosecute, collect, compromise, settle and adjust the same for their clients in their own interest and for their own profit for a contingent fee of 25% of the amount collected by voluntary payment, compromise or adjustment or by suit."

We are unable to agree with this view. Obviously many of the services performed by the bureau come within the legitimate scope of the activities of a lay investigator. The ascertaining of the facts relating to the movements of a particular freight car does not constitute the practice of law. A layman may properly determine whether or not vegetable containers were found broken upon the arrival of a freight car at its destination; the condition of fruit or vegetables loaded into a refrigerator car, or whether or not shipping instructions as to icing and ventilation were complied with. By a comparison of the record of the actual movement of a particular car with train schedules, he may properly determine if in fact a car has been moved to destination in an expeditious manner, and he may properly investigate and ascertain the prices paid at a certain market for a particular period.

When the process of handling claims adopted by the bureau and to a certain extent acquiesced in by the carrier, is properly analyzed it seem that the two things which properly constitute the practice of law are the securing of agreements from the shippers which confer upon the bureau a discretion to settle claims, and the action of the bureau in accepting compromise offers of settlement on behalf of the shippers represented by it.

Under our view of the case it is not essential to go further than to say that the above mentioned actions probably constitute the practice of law, but it may be well to point out that the repeal of Article 430a, Vernon's Ann.Penal Code, did not deprive the judicial department of government of the power to define the practice of law. This fact is expressly recognized by the provisions of the Act repealing said article wherein it is recited that, "under the Constitution, the judicial department of the State government has power to define the practice of law", Act 1949, 51st Leg. ch. 301, p. 548. The leading case in Texas involving the unlawful practice of law is, Hexter Title & Abstract Co. v. Grievance Committee, 142 Tex. 506, 179 S. W.2d 946, 157 A.L.R. 268. Other authorities on the point particularly relating to the collection of claims are: Berk v. State ex rel. Thompson, 225 Ala. 324, 142 So. 832, 84 A.L.R. 740; Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 94 A.L.R. 356; People ex rel. Chicago Bar Ass'n v. Goodman, 366 Ill. 346, 8 N.E.2d 941, 111 A.L.R. 1; Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149; Wilkey v. State ex rel. Smith, 244 Ala. 568, 14 So.2d 536, 151 A.L.R. 765; In re Lyon, 301 Mass. 30, 16 N.E.2d 74; Meunier v. Bernich, La.App., 170 So. 567; Public Service Traffic Bureau v. Haworth Marble Co., 40 Ohio App. 255, 178 N.E. 703; Boykin, Solicitor General v. Hopkins, 174 Ga. 511, 162 S.E. 796, 799; Clark v. Austin, 340 Mo. 467, 472, 101 S.W.2d 977, 982.

We do not regard the filing of notice of claim under the provisions of Section 2b of a Uniform Straight Bill of Lading as constituting the practice of law. This notice of claim may be filed by any authorized agent of the shipper. Said section 2b, insofar as material here, provides that: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property. * * * Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

The above quoted portion of the bill of lading is inserted for the benefit of the carrier. Its purpose is "to give the carrier opportunity to investigate or inquire" as to the movements or condition of a certain shipment "while the facts

bearing on the justice, of the claim are readily available.' 13 C.J.S., Carriers, § 235, page 463.

"As regards the sufficiency of the notice of a claim, or of a claim, for loss of, or injuries to, property shipped, the stipulation requiring such notice or claim is given a reasonable construction, and it is very generally held or recognized that no particular form of notice or of claim is necessary, that neither formality nor technical exactness is necessary, and that a substantial compliance with the stipulation is all that is required. It 'is addressed to a practical exigency and it is to be construed in a practical way.' (Quoting from Georgia, Florida and Alabama Railroad Company v. Blish Milling Co., 241 U.S. 190, 36 S. Ct. 541, 60 L.Ed. 948.) In the absence of any requirement therefor in the stipulation, a claim need not set forth all particulars and it is not insufficient merely because there is no formal demand for money damages nor because it does not set forth the damages claimed." 13 C.J.S., Carriers, § 239, page 480.

■ It is not necessary that an attorney at law be employed to file a claim or notice complying with Section 2b of the bill of lading. Lawyers are not like the river barons of the middle ages who exacted tribute from commerce because of their strategic location of the arteries of trade. The rule limiting the practice of law to trained and qualified persons is founded upon the principle of public benefit and protection. The rule however does not go beyond the principle upon which it is based and should not be extended beyond the requirements of the common good.

■ We may at this point accept the premise that the bureau's action in securing agreements from shippers authorizing it to settle claims and its action in accepting compromise offers constitute the practice of law. The question then arises as to the right of appellee to enjoin such practices. As heretofore pointed out, appellee's right to injunction is based upon an invasion of its property rights. It is axiomatic that one is not entitled to an injunction to restrain actions which he may pre-

vent by acting for himself. While we do not go so far as to say that one in the position of the appellee here could not secure an injunction enjoining acts constituting the unlawful practice of law as distinguished from barratrous actions, it should be pointed out that the appellee occupies a different position with reference to the question of the unlawful practice of law than does a committee of the State Bar Association. Thompson v. Larry Lightner, Inc., Tex.Civ.App., 230 S.W.2d 831.

■ It was pointed out in Hexter Title & Abstract Co. v. Grievance Committee, 142 Tex. 506, 179 S.W.2d 946, 157 A.L.R. 268, that the Act creating the State Bar, Acts 1939, 46th Leg., p. 46, Art. 320a—1, Vernon's Ann.Civ.Stats., constituted that organization an adminstriative agency of the Judicial Department of the State and prohibited persons not members of the State Bar from practicing law. This Act declared the public policy of the State, and by appropriate rules the Supreme Court provided for the enforcement of this public policy through committees of the State Bar, which were empowered to act for and on behalf of the public and for its protection. The right of the appellee, on the other hand, is limited to a vindication of property rights peculiar to him. Considering this restriction upon his demand for injunctive relief, we are of the opinion that appellee was not entitled to an injunction relating to appellant's method of settling claims.

We do not base this holding upon the theory that as the appellee utilized the services of lay adjusters, the shippers should be permitted to do likewise. On this point, see Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149. But it is undisputed that appellee's agents entered into negotiations with representatives of appellant; that they "conferenced" claims in accordance with the carrier adopted rules known as "Principles and Practices," and that they made offers of payment and agreed upon terms of settlement in these conferences. The appellee, consequently, is in no position to say that the bureau should be restrained from accepting the offers made by his agents

in these conferences. His agents made or accepted these offers and paid off accordingly. In effect, appellee is requesting a court to take an action which he could have taken himself. Accordingly, appellee is not entitled to injunctive relief in the particular discussed.

We realize that this conclusion limiting appellee's injunctive relief stems from the difference between our concept of the case and that held by the trial court. As above pointed out, the trial court considered appellant's actions as essentially constituting a unit. We regard the various actions taken by appellant in conducting its business as being divisible. In our opinion an injunction should not issue to restrain those actions which are legal, or those actions concerning which the appellee is in no position to complain.

What has been said disposes of all issues of this case save those relating to the declaratory judgment portion of the decree. Appellant insists that this part of the judgment is erroneous for a number of reasons and should therefore be set aside. Appellant also asserts that another form of declaratory judgment should be rendered so that appellant can "have its rights defined and settled by a declaration of court."

By cross-appeal appellee likewise attacks the declaratory part of the judgment in certain particulars.

Despite the seeming desire of both parties for the rendition of a declaratory judgment, we have come to the conclusion that this is not a proper case for the rendition of a decree under the Uniform Declaratory Judgments Act, Article 2524—1, Vernon's Ann.Civ.Stats. Appellant's points attacking this portion of the decree must be sustained.

According to the evidence, appellant has been operating its claims business in substantially the same way for a number of years. Any cause of action appellee may have by reason of appellant's methods of operation has fully accrued. In Anderson on Declaratory Judgments, p. 192, § 69, it is said that: "If a common-law cause of action has already matured, and the customary processes of the law are open and available, and they are ample and adequate, unhampered and not complicated, they should generally be adopted rather than an application for a declaration of rights. That is to say, where a cause of action has already accrued that is justiciable, in a well-recognized and traditional form of action, declaratory relief will not be granted as a rule."

In Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692, 693, the Court said: "If adequate relief, and an appropriate remedy, are presently available to the complaining party through the means of other existing forms of action or proceeding, jurisdiction for a declaratory judgment will not ordinarily be entertained. If such relief is presently available, parties will be left to their appropriate actions provided by law rather than permit a resort to the declaratory judgment proceeding. Union Trust Co. of Rochester v. Main & South Streets Holding Corporation, 245 App.Div. 369, 282 N.Y.S. 428; Post v. Metropolitan Casualty Ins. Co. of New York, 227 App. Div. 156, 237 N.Y.S. 64, affirmed, 254 N. Y. 541, 173 N.E. 857; Sheldon v. Powell, 99 Fla. 782, 128 So. 258; Oldham County v. Arvin, 244 Ky. 551, 51 S.W.2d 657; Stewart v. Herten, 125 Neb. 210, 249 N.W. 552; Reynolds v. Chase, 87 N.H. 227, 177 A. 291; Di Fabio v. Southard, 106 N.J.Eq. 157, 150 A. 248; James v. Alderton Dock Yards, 256 N.Y. 298, 176 N.E. 401; Merman v. St. Mary's Greek Catholic Church of Nesquehoning, 317 Pa. 33, 176 A. 450; Board of Sup'rs of Amherst County v. Combs, 160 Va. 487, 169 S.E. 589."

In Fritz v. Superior Court, 18 Cal.App. 2d 232, 63 P.2d 872, 873, hearing denied by the Supreme Court, it was said that

"Though the existence of an available remedy in the ordinary action at law or in equity does not necessarily bar the right to proceed under these sections of the Code (Wollenberg v. Tonningsen, 8 Cal.App.2d 722, 726, 48 P.2d 738), nevertheless, the character of the action must be determined from an examination of the facts pleaded, rather than from the title or prayer for relief, and when, upon such examination, it appears that the cause of action has

already accrued and the only question for determination is the liability or relief for or to which the respective parties are charged, 'the nature of the action is not a cause for declaratory relief, but is defined by the subject-matter of the accrued cause of action.' Standard Brands of California v. Bryce, 1 Cal.2d 718, 721, 37 P.2d 446, 447.

"Applying this principle to the case at hand, we find a cause of action accrued before this suit was filed—a cause to determine the validity of an election of corporate officers—and this is a cause for which an adequate and available remedy is expressly provided by law. Hence, though the prayer asks for declaratory relief, the facts pleaded show affirmatively that it is not a case for declaratory relief but one coming directly under section 315 of the Civil Code."

■ The Uniform Declaratory Judgments Act does not provide for the giving of merely advisory opinions on the part of courts. In government this is a duty of the executive branch. In private business it is the function of the legal profession. City and County of Denver v. Lynch, 92 Colo. 102, 18 P.2d 907, 86 A.L.R. 907.

■ It is further a well established rule that a declaratory judgment should not be based upon facts which are particularly subject to mutation and change as are the facts here. Anderson on Declaratory Judgments, p. 195, § 72.

■ While this case has been well and thoroughly briefed by both sides in this Court, and the record of the trial court below indicates careful consideration of the issues involved, the fact that an agency of the State Bar was not a party below is a matter which may be properly considered in determining whether or not a declaratory judgment relating to the practice of law should be rendered. Article 2524—1, § 6; Thompson v. Larry Lightner, Inc., Tex.Civ.App., 230 S.W.2d 831.

For the reasons above stated, the judgment of the district court will be reformed so as to combine parts of paragraphs 6 and 7 of the injunctive portion of the decree with paragraph 1 thereof so as to provide that: Southern Traffic Bureau and W. M. White, Sr., W. M. White, Jr., Cecil White, Bernice White and Jack White, their agents, servants and employees be, and they are hereby perpetually enjoined from in any manner soliciting employment to present, prosecute, settle, collect, adjust or compromise any claim or claims (other than freight rate claims) against Plaintiff or Intervener (appellee) in which they have no interest, for their own profit, and from procuring others to solicit such employment for them. Said parties are also enjoined from instigating and advising others to file lawsuits against Plaintiff or Intervener (appellee), and from threatening to do so.

The remainder of the injunctive portion of the decree is vacated, as is the portion of the decree (paragraphs lettered a to k, inclusive,) purporting to declare the rights of the parties in accordance with the provisions of the Uniform Declaratory Judgments Act. Article 2524—1, Vernon's Ann.Civ.Stats.

The decree as so reformed will be affirmed. Costs of appeal are adjudged one-half against appellant and one-half against appellee.

Reformed and affirmed.

On Motion for Rehearing.

By assignment of error numbered "LVI" appellee contends, in effect, that the second sentence of the injunctive decree as modified by this Court should be amended so as to read as follows: "Said parties are also enjoined from instigating and advising others to file *claims* and lawsuits against Plaintiff or Intervener (appellee), and from threatening to do so."

We are of the opinion that the instigation of the filing of claims is violative of the barratry statute. McCloskey v. San Antonio Public Service Co., Tex.Civ.App., 51 S.W.2d 1088. Particularly is this true when one party uses the threat of the filing of numerous claims against another party in an attempt to force a settlement of a certain specific claim at issue. The in-

752

junction should, however, not be limited to the particular example given. The provisions of Article 430, Vernon's Ann.Pen. Code are much broader and expressly proscribe the instigation or encouragement of "the bringing or prosecution of any *claim* in which (a party) has no interest". Appellee's point numbered "LVI" is sustained and our judgment will be modified accordingly.

Appellee, by a number of assignments, complains of our holding that he is not in a position to demand that appellant bureau be restrained from compromising claims which have been asserted against him. Particular objection is made to our statement in the original opinion that, "In effect, appellee is requesting a court [of equity] to take an action which he could have taken himself."

R. R. Maloan, Traveling Freight Claim Adjuster for the Missouri Pacific Lines, testified that he had been working for said railroads since 1926 as an investigator and adjuster of freight claims; that the "Principles and Practices" were put out by the Claims Division of the Association of American Railways in an effort to secure a universal claim payment policy for all rail lines; that he does not make any payment arising from conferences with claimants or their representatives unless the claim is in conformity with "Principles and Practices," and that regardless of what the law may be he is governed by said "Principles and Practices."

As to the way in which a "conference" is conducted, Maloan testified as follows: "Well, I go to (the bureau's) office with a number of claims, * * * I usually have them lined up in numerical order insofar as our claim numbers are concerned. I give (the bureau's representative) the record of movement, together with the schedule applicable and depending on the type of service, protective service under which the shipment is moving, giving him that record. If there is delay we figure market decline, if any, and if there is any difference, then we determine the loss based on the market value on date due as against what was realized, and if there is delay located with the claimant, then amount is prorated. If there is a protective service defect, that then is prorated depending upon the seriousness of it, and that deducted from the total loss, and then the total loss prorated as to delay. Of course, that is figured on the average with the good order packages in the car, and every dollar received in salvage by the receiver, the amount of salvage received less the handling charges, and that payment as a general rule is 100 per cent. *Sometimes my offer is accepted and sometimes it is not.*"

We believe the testimony of appellee's freight claim adjuster fully supports our statement of the record set forth in the original opinion. Upon analysis it will be found that for the most part appellee's complaints, including the one now under discussion, are not directed to the separate details of the operating processes of the bureau, but rather to its being operated at all. We differ with appellee in that we hold that the injunction should be restricted to the illegal items or details of the bureau's method of operation, and to those about which the appellee is in a position to complain. In our opinion, appellee has cited no authority which would justify the extension of the injunction beyond the scope prescribed by this Court in its original opinion as modified in the particular hereinabove set out.

The trial court refused to hold that the members of the appellant bureau could not testify in lawsuits filed against appellee. Appellant complained of this ruling by cross point. Our failure to sustain said point is assigned as error upon rehearing. Appellee argues that as the members of the bureau receive a certain percentage of any recovery obtained by reason of their contract with the plaintiff shippers, they should be disqualified from testifying. This point was overruled for the reason that in the absence of special circumstances not disclosed by the present record, a court will not attempt to determine the admissibility of evidence which may be offered upon the trial of a lawsuit which subsequently may be filed. Anderson, Declaratory Judgments, p. 148, § 53.

Appellee's motion for rehearing is granted in part, as above indicated. In all other particulars it is overruled.

Appellant's motion for rehearing has also been considered and is overruled.